A. CARLSON, Appellee, v. CITY OF MARSHALLTOWN, Appellant.

No. 40693.

MAY 5, 1931.

R. A. Rockhill, and E. N. Farber, for appellant.

F. E. Northup, and C. H. E. Boardman, for appellee.

MORLING, J.—I. The action was brought at law and is submitted to this court as one at law. After the taking of evidence was concluded plaintiff filed amendment to his petition invoking the equitable jurisdiction of the court ''and subject to the claims made in its petition and without in any manner waiving the same * * * (a) that this court assume jurisdiction and equitable control over each of the funds in question,'' etc. There was no motion to transfer the suit as a whole or any issue to equity. Plaintiff moved to re-open the case. Defendant resisted and filed motion to strike amendment. It does not appear that the court ruled specifically upon these motions, though additional evidence was taken. The court found it not necessary to determine the equitable issues but reserved further hearing if as a result of appeal it should become necessary. The additional evidence received had reference to the amendment to the petition. It was within the discretion of the court to receive the additional evidence and its reception was without prejudice.

Substantially all of the evidence in behalf of plaintiff was objected to by defendant on the ground principally that it

was "incompetent and immaterial unless plaintiff has shown, or is prepared to show, such action on the part of the city council as would make this obligation a binding one on the city and one that the city would be obliged to pay." That the evidence did not show "any action on the part of the city council that would make the city liable for the plaintiff's claim." As to most of the objections rulings were withheld. The testimony occupies more than 250 pages of the abstract. In entering judgment the court overruled all defendant's objections. Defendant now assigns numerous errors in such form as "the court erred in overruling the objections of defendant to the admission of testimony of Wolff, that he employed Carlson to grade the streets in suit in the absence of evidence as to some definite and legal authorization from the council to said Wolff to employ plaintiff and that such evidence was a legal conclusion." (Giving references to record.) The trial was to the court. The court made findings of fact. These findings have the effect of a verdict of a jury. There is evidence sufficient to support them. The case is not triable de novo. The findings are conclusive here.

Plaintiff is a contractor. Defendant had ordered the construction of a number of permanent sidewalks. It was within defendant's power to establish grades and to grade streets and to pay the expense thereof from the general or grading fund or from the highway or poll taxes. Code, 1927, Sections 5938, 5940, 5951. The construction of permanent sidewalks is not permissible "until the bed of the same shall have been graded so that, when completed, such sidewalks will be at the established grade." Section 5962. That grades had been established and permanent sidewalks ordered was not made an issue, but was assumed or proved without conflict. It appears also that some of the streets where part of the work in controversy was done were to greater or less extent out of repair, or not in proper condition for travel.

To bring the streets to grade for the permanent sidewalks required extensive excavation for which the equipment owned by the defendant was inadequate. The plaintiff was an experienced contractor and had a steam shovel, trucks and a crew. The street commissioner testifies:

"Well, the council gave me a lot of work to do grading for sidewalks and cutting streets down, and I took it up with

several of them that it was impossible for me to ever do that amount of work with the equipment I got; so Mr. Wolff, the chairman of the Street and Alley Committee, wanted to know what we could get to do it; I told him I thought we could get Carlson and his steam shovel; he says, 'what will that cost us a day?' I says 'In the neighborhood of twenty-five dollars a day.' That is customary the world over for a steam shovel of that size. * * * Mr. Wolff and I went to see Mr. Carlson. * * * Q. Did you know what the regular going price was for steam shovel work at that time? A. Yes, sir. * * * Twenty-five dollars a day. Q. And did you know what the regular going price for Republic trucks was? A. Yes, sir. * * * Q. How much was that? * * * Well, for the kind that he used, two dollars and a half an hour was a reasonable price. Q. Now, do you know what the going rates of men was at that time, just common labor engaged in that kind of work? * * * Oh, from forty-five to fifty cents. A. And a fireman got how much? A. Well, firemen should get, or got, about five or six dollars a day. * * * Mr. Wolff asked him what he would take a day for the use of his shovel, and he said, twenty-five dollars a day, at the rate of twenty-five dollars a day; he said, 'that is all right, you can go to work.' * * * He asked him how much he wanted a day for the trucks, and he said, two dollars and a half an hour. * * * Forty cents an hour for fireman, I think it was, and an engineer was a dollar an hour. Q. And what about common labor? A. I think that was forty cents * * * Well, he went to work where Mr. Wolff authorized him to.''

Thus the plaintiff was employed through the agency of the chairman of the Street and Alley Committee and Street Commissioner. Grades were furnished by the city engineer. Plaintiff was employed for no definite amount of work and for no definite time. The city council took no formal action on this employment. The work and the prices were freely discussed with the members of the committee and in the presence of other members of the council, all of whom were fully informed as to what was being done. The earth removed in the work of excavating was used partly upon the streets and part of it sold. It does not appear that the City has accepted any part of the price of earth sold. Streets, however, were put in repair and brought to grade through the use of such material. For part

of the work plaintiff's bills were allowed by the council. For that in controversy plaintiff presented bills to the council which were at first rejected and later allowed. Still later the allowance was by the council revoked. While there was during the progress of the work discussion among the members of the council on the question what funds were available for the payment of the work and it was said among them that the work ought not to be done under such an informal arrangement and without knowledge of how it was to be paid for, the work was not discontinued. The council took no action for its discontinuance but with full knowledge of the circumstances permitted plaintiff to proceed without objection made to him. The work performed for which payment has not been made is indisputedly of the value and at the rates specified of $15,009.98. That its value to the city was of that amount is not questioned.

Defendant's principal contention is that the power to grade and improve streets is legislative or governmental; that the individual members of the council or municipal officers may not determine the necessity of street improvements; that the exercise of such functions must be "at an assembled meeting of the council and expressed in some distinct and definite form;" that "no committee of the council, officer or agent purporting to represent or act for the municipality can act beyond the scope of their authority, and in the absence of ratification by the council, obligate the municipality on the contract;" that "Ratification of invalid contracts of a municipality cannot be inferred."

The difference between an express and an implied contract is in the evidence by which the contract is proved. Thompson Yards v. Haakinson, 209 Iowa 985; In re Newson's Estate, 206 Iowa 514. In the case of an express contract the evidence shows an express proposal or promise and acceptance. In that of an implied contract it shows the proposal or promise and acceptance by implication. *Id.* The facts are set out in the petition at length. There is no doubt of the sufficiency of the petition in this respect. It may be assumed without deciding that the defendant could contract with respect to the subject here in controversy only through its council, but it could, in the absence of a statute restricting its power in that respect or limiting it to particular formalities or procedure, contract by implication as well as expressly. Duncombe v. Fort Dodge, 38 Iowa. 281,

283; 44 C. J. 136. The work here in controversy and the services performed were such as the defendant had power to engage and to bind itself to pay. So far as the question before us at this point is concerned there is no statutory limitation or restriction upon the method by which this power may be exercised. In the absence of statutory limitation, the city in the exercise of the business powers which it undoubtedly possessed in relation to the matters here in controversy, had, acting through its council, the same discretion and was subject to the same obligations and might ratify or estop itself the same as a private corporation or an individual under similar circumstances might have done. Duntz v. Ames Cem. Assn., 192 Iowa 1341, 1344; Duncombe v. Fort Dodge, 38 Iowa 281; City of Ida Grove v. Armory Co., 146 Iowa, 690; First National Bank v. Emmetsburg, 157 Iowa 555, 556; Humboldt County v. Town of Dakota City, 197 Iowa 457, 465; Marion Water Co. v. Marion, 121 Iowa 306, 321; Miller v. Des Moines, 143 Iowa 409, 425; Des Moines v. Horrabin, 204 Iowa 683. Defendant, through its council, knew that the work was being done under apparent employment with expectation that it would be paid for, had full opportunity through its council to discontinue the work at any moment. Defendant, through its council, with full knowledge of the facts, knowing that the work was being performed by plaintiff for it under apparent contract therefor and with the expectation that defendant would pay for it acquiesced during its progress in its performance, accepted the work as it proceeded, accepted and is now enjoying the benefits thereof. It does not lie with the defendant to say that through the fault or negligence of its council no formal contract was made, or that the chairman of the Street and Alley Committee or the Street Commissioner had no authority to engage plaintiff's services. It makes no difference under these circumstances that the defendant had no discretion as to retention of the benefits after they had been rendered. Defendant did have full opportunity to stop the rendition. On ordinary principles applicable to municipal and private corporations and to individuals alike defendants should pay, if not as on an express contract, that which on the undisputed evidence in this case was the same thing—the reasonable value of plaintiff's work and services. (Cases above cited.)

II. Defendant appeals to the budget law. Code, 1924,

Chapter 23. The purpose of the budget law, so far as we are here concerned, is to secure economy in and fair prices for building or other construction work to be paid for "out of the funds of the municipality." By Section 351, "the words 'public improvement' as used in this chapter shall mean any building or other construction work to be paid for in whole or part by the use of funds of any municipality." By Section 352, "before any municipality shall enter into any contract for any public improvement to cost $5,000 or more, the governing body proposing to make such contract shall adopt proposed plans and specifications and proposed form of contract therefor, fix a time and place for hearing thereon * * * and give notice thereof * * *" Section 353 provides that any person interested may appear at the hearing and file objections. The governing body is required to hear evidence and enter of record its decision from which an appeal to the director of the budget may be taken. If appeal is taken the governing body is by Section 355 required to "submit to the director for examination and review the following: 1. A copy of the plans and specifications for such improvement. 2. A copy of the proposed contract. 3. An estimate of the cost of such improvement. * * * 5. A copy of the objections, if any, which have been urged by any taxpayer against the proposed plans, specifications or contract, or the cost of such improvement. 6. A separate estimate of the architect's or engineer's fees and cost of supervision. 7. A statement of the taxable value of the property within the municipality proposing to make such improvement. 8. A statement of the several rates of levy of taxes in such municipality for each fund. 9. A detailed statement of the bonded and other indebtedness of such municipality. * * *"

Section 357 requires the director to "examine, with the aid of competent assistants, the entire record," and if the director shall "find that the plans and specifications and form of contract are suitable for the improvement proposed and that it is for the best interests of the municipality and that such improvements can be made within the estimates therefor, the director shall approve the same. Otherwise the director shall recommend such modifications of the plans, specifications, or contract, as in his judgment shall be for the public benefit, and if such modifications are so made, the director shall approve

the same. The director shall certify his decision to the body proposing to enter into such contract, whereupon the municipality shall advertise for bids and let the contract subject to the approval of the director who shall at once render his final decision thereon * * *''

These sections have reference to "public contracts," to public works, which require plans and specifications or estimates, which may be the subject of competition and which involve the funds of the municipality, current or funded, and their expenditure and the local tax levies. The law, so far as we are now concerned, is directed to the promotion of economy in the letting of public contracts. The director of the budget is not the supervisor of, or a court of appeal in, the administration of municipal affairs.

Here the defendant entered into no contract "for any public improvement to cost $5,000 or more." The plaintiff was engaged from day to day to do excavating and to remove and transport material in grading and repairing streets. We are referred to no statute which required such work to be done under formal contract. The court found plaintiff might have been discharged and the work discontinued at any moment. There was no fraud or collusion. The case is not within the scope or purview of the budget law.

III. Defendant cites Code, 1924, Section 5663. Subdivision 16, which provides that cities and towns shall "make separate appropriations in cities for all the different expenditures of the city government for each fiscal year at or before the beginning thereof, and it shall be unlawful for it or any officer, agent, or employee of the city to issue any warrant, enter into any contract, or appropriate any money in excess of the amount thus appropriated during the year for which the appropriation is made. No city shall appropriate in the aggregate an amount in excess of its annual legally authorized revenue, but cities may anticipate their revenues for the year for which appropriation is made, or bond or refund their outstanding indebtedness.''

Defendant contends that the council "did not pass an appropriation ordinance making separate appropriations for the different municipal purposes at or before the beginning of the fiscal year of 1925. To this extent the council did not observe

the provisions of the statute and failed to perform their duty in that regard, but this failure on the part of the council did not mislead the appellee."

Defendant's assignment of error is, "The court erred in holding plaintiff entitled to recover for the work alleged to have been done, where there was no money in the grading fund for the fiscal year of 1925 to pay plaintiff claim and no showing of a diversion or improper use of such fund and any contract entered into or indebtedness incurred in excess of revenue in the fund to pay for claims against it was unlawful under the provisions of Par. 16, Sec. 5663, Code of Iowa for 1924."

. Defendant says in argument:

"There was in fact a proper tax levy made by the city council for the needs of the municipality for the year 1925, and this tax levy is in evidence as Exhibit 100a, 100b and 100c. The city council requested for use in the grading fund the sum of $7886.73, * * * and from this levy received in the grading fund $7773.28. * * * From other sources an additional $986.12 was put in the grading fund and this constituted the money which the city had in the grading fund for the fiscal year of 1925. True, the council could have used money from the general fund, from poll taxes and from highway taxes for grading purposes, but until the council sets apart these funds, money for grading purposes, it cannot be assumed that the council intended to use any such funds for grading purposes. Out of this grading fund the appellee had already received for work under Exhibits B, C and D about $4400, $1700.16 had been applied to the retirement of a grading bond * * * and about $2,000 used for wages and salary. * * * This practically consumed the grading fund. If no appropriation ordinance was adopted by the council, and no other money set aside for grading purposes, the amount requested in the tax levy would seem to be the proper limitation on the expenditures for this purpose made by the municipality." Defendant argues that the "agreement with plaintiff is not an ordinary ministerial expense. It was a street improvement involving a legislative act of the council."

The matter of the burden of pleading and proof upon this proposition and also upon the one following that the contract was not let to the lowest bidder on sealed proposals is not raised.

The petition is not drawn on the theory of express contract within the scope of either of the statutes upon which these assignments of error are based. The petition does not allege compliance with those statutes. The sufficiency of the petition was not attacked. The answer consists of denials, one of which is the denial of liability because of non-compliance with the budget law. Another because ''the amount of the plaintiff's claim was far in excess of the revenues of the fiscal year of 1925 appropriated or available in any fund for the payment thereof. * * *'' Another denial was ''for the reason that Rule 43 * * * prohibited any committee of the council from making agreements or arrangements for the expenditure of more than $100 until given authority to do so at some regular adjourned or special meeting of the city council. * * *'' The case was tried on the theory that the burden of proof on these allegations was on defendant. The court found that the hiring of the plaintiff was soon after the commencement of the fiscal year of 1925; that the revenues of the city at that time were practically all unused; that the contract was simply for the hiring by the hour or by the day, plus a bonus, with the right of Carlson to quit any day and the right of the city to discontinue his services any day. Certainly he was hired for no definite time.'' Consequently the court found that there was no showing ''that the contract of hiring at the time it was entered into was covered by this paragraph.''

As has been seen the expense of grading may be paid from the general or grading fund or from the highway or poll taxes. The findings of the court are not attacked as not having sufficient evidence to support them. There was money in the grading fund at the time that plaintiff was employed. When it was exhausted does not appear. Defendant's authority to pay the plaintiff was not limited to money in the grading fund. That it could not have paid the plaintiff from other funds, or at what stage or at any stage of the work it could not have so paid, does not appear. The statute suggests numerous possible difficult problems that might arise in similar cases, but on which we have no occasion on the record to express an opinion. See 44 C. J. 114, 1141.

We are unable to see how on the issues as they were made

in the court below and practically tried or how on the findings of the trial court this assignment of error can be sustained.

IV. Defendant assigns error:

■ "The court erred in finding plaintiff entitled to recover in that the grading was a street improvement which must be let to the lowest bidder on sealed proposals as required by Sec. 6004, Code of Iowa for 1924, and in not finding the purported contract between councilman Wolff and the plaintiff void because of the failure to observe this statute."

The petition did not purport to be on a contract, within Section 6004. The defendant though it assumed the burden of pleading and proving non-compliance with statutory requirements did not either in pleading or evidence raise in the lower court the question of compliance with Section 6004. The court's attention was apparently not called to that section and he made no ruling with reference to it—none to which the assignment of error last referred to could apply. The question is presented here for the first time and cannot be considered.

■ V. Another assignment of error is that:

"The court erred in holding that the rule of the council limiting the authority of a councilman to incur an indebtedness in excess of $100 was waived by the defendant and plaintiff not bound to know this limitation."

. Defendant's point is:

"Rules of procedure, adopted by the council and made of record, for the conduct of municipal business and limiting the power and authority of individual councilmen to make contracts and incur indebtedness against the city, in excess of $100 without same being approved by the council, must be observed and any person dealing with a member of the council is bound to know the limitation of his authority."

Plaintiff has recovered not on an unauthorized contract of the Street and Alley Committee, the Street Commissioner or other individual officers, but on an implied contract with the city in the making of which the transactions with the committee and the street commissioner were but stages. The evidence in its entirety supports the finding of the court that the city through

384

its council, with full knowledge of all of the facts and of plaintiff's employment accepted and adopted the employment of plaintiff, accepted his work. The trial court was on the evidence warranted in finding that by acts and conduct of the plaintiff on the one side and of the defendant through its council on the other plaintiff was employed to do and did the work in controversy on the mutual expectation that he should be paid for it. Hence there was an implied contract between the plaintiff on the one side and the defendant acting through its council on the other. (Cases above cited.)

The rule of the council relied upon is merely one of defendant's agents, the council, adopted by the council for its own guidance, which the council might waive at its pleasure.—Affirmed.

STEVENS, ALBERT, KINDIG, and WAGNER, JJ., concur.