STATE OF IOWA ex rel. BEN J. GIBSON, Attorney-General, Plaintiff, v. AMERICAN BONDING & CASUALTY COMPANY et al., Appellees.

JEPSON, STRUBLE & SIFFORD, Appellees, v. NATIONAL GLASS COMPANY, Appellant.

No. 40887.

JUNE 20, 1931.

Griffin, Griffin & Griffin, and Cole & Kossoff, for appellant.

Jepson, Struble & Sifford, for appellees.

KINDIG, J.—For some years before 1921, the American Bonding & Casualty Company was a corporation at Sioux City, engaged in the surety and insurance business. It appears that the American Bonding & Casualty Company consolidated, or attempted to consolidate, with the Chicago Bonding & Insurance Company, at Chicago, Illinois. During that period of time, the claimant, defendant and appellant, the National Glass Company, was a business organization operating in Chicago, Illinois, which, under contract with the American Bonding Company or the Chicago Bonding Company, furnished and installed broken glass covered by policies written by one or the other of those bonding and insurance companies.

In 1921, the Attorney General of Iowa brought an action to obtain the appointment of a receiver for the American Bonding & Casualty Company. Likewise that attorney general commenced a proceeding in Chicago for the appointment of a receiver for the Chicago Bonding & Insurance Company. The basis for these receiverships was insolvency. Accordingly, receivers were appointed respectively for the two institutions.

At the time the receivership proceedings were instituted, the American Bonding & Casualty Company or the Chicago Bonding & Insurance Company was indebted to the appellant for glass furnished and installed, as above explained, in the sum of $17,570.13. A notice was duly published under order of court by the receiver of the American Bonding Company, asking creditors to file claims within a stipulated time. Responding to the invitation extended by that publication, appellant, on September 15, 1921, filed its claim. Thus the matter remained until February 22, 1922, when the receiver of the American Bonding Company, through his attorney, filed in said cause the following ob-.

jections and exceptions to the claim theretofore filed by appellant:

"Now comes W. F. Grandy, the duly appointed, qualified acting and permanent receiver of the American Bonding & Casualty Co., and objects and excepts to the alleged claim of the National Glass Co., No. 453, and the allowance thereof on the following grounds:

"1. For the reason that $6,176.73 of the charges made by said proof of claim is for glass furnished and services rendered at the instance and request of and for the Chicago Bonding & Insurance Co., and is not a proper claim or charge against the American Bonding & Casualty Co. or the receiver of said company.

"2. For the reason that the said claimant has filed a claim with Leonard A. Brundage, receiver of the Chicago Bonding & Insurance Co. of Chicago, Ill., for the sum of $17,574.59, being based upon the same claim made against this receiver to the assets of the American Bonding & Casualty Co. * * *

"9. For the reason that Leonard A. Brundage as receiver of the Chicago Bonding & Insurance Co., under the order of the court in Chicago, Ill., has seized and taken possession of all the assets of the Chicago Bonding & Insurance Co., amounting to more than $300,000.00 of securities for the exclusive benefit of the creditors of the Chicago Bonding & Insurance Co., and for the reason that the said claimant has filed his claim with Leonard A. Brundage as receiver of the Chicago Bonding & Insurance Co. and is estopped and barred from making any claim against W. F. Grandy as receiver of the American Bonding & Casualty Co., or from receiving any dividends out of the assets of the American Bonding & Casualty Co., said objections being duly sworn to by W. F. Grandy, Receiver of the American Bonding & Casualty Co."

No action was then taken on this claim for a period of more than seven years. Appellant apparently considered their demands against these bonding companies a loss, for at no time did they take any further action to have their claim established against the American Bonding Co. On or about January 17, 1929, however, the attorney for the American Bonding Company receiver, in court at Sioux City, suggested to Jepson, Struble &

Sifford, interveners and appellees, that several claims were filed in the receivership proceeding without local legal representation. Also the attorney for the receiver stated to appellees that these unrepresented claims were to be presented to a referee appointed in said cause. This attorney for the receiver further suggested "and wished" that appellees would secure the appointment or engagement as local counsel for the unrepresented claimants, because that would enable the receiver's attorney "in the hearings on the respective claims to arrange for the times of hearing, making of stipulations, or agreements that might possibly be necessary to be made in connection with the hearing." Complying with the request made by the receiver's attorney, appellees selected appellant's claim, and, on January 17, 1929, wrote the latter the following letter:

"Some time ago you filed a claim for $17,574.59 against the Receiver of the American Bonding & Casualty Company here (Sioux City), which claim has not been allowed. A referee was appointed by our court (the state district court, at Sioux City) to hear testimony on various claims in this matter not allowed, and they are now proceeding with the taking of proof in support of the various claims. You do not seem to be locally represented and we shall be glad to look after this matter for you on the basis of one-third of the amount paid on the claim. Unless you are represented by some one doubtless there will be an entire lack of proof in support of your claim and the same disallowed."

Replying to appellees' letter, appellant wrote them March 1, 1929, to this effect:

"In reply to your letter of January 17th, we herewith authorize you to represent us in the matter of our claim of $17,574.59 against the receiver of the American Bonding & Casualty Company. Your fee for this service to be one-third of amount you collect. However, if you do not succeed in collecting any portion of this claim, there will be no charge against us for this service."

Again on March 13, 1929, appellees wrote appellant this letter:

"Your understanding of our fee is correct, namely, we to

receive one-third of the amount paid on this claim. If nothing is paid thereon there is to be no charge for our services. We are investigating this matter and will have here, we think, sufficient proof for the establishment of the same. There are a large number of claims in this receivership, as you may well imagine. The final conclusion as to the allowance or disallowance of them cannot be arrived at for some considerable time, but we will keep in touch with the matter and when anything does come up of interest to you, we will advise you with regard thereto.''

Appellees, in accordance with their employment, proceeded to obtain testimony for the purpose of establishing appellant's claim. They first investigated the receiver's books and interviewed the receiver, or his assistants. That investigation and interview revealed the fact that there was sufficient evidence in Iowa to establish the claim, and that it would not be necessary to take depositions in Chicago. So appellees appeared before the referee in the receivership proceedings, on behalf of appellant, and presented the evidence for the purpose of establishing the foregoing claim. After listening to the evidence, the referee allowed the claim in the sum of $17,570.13. Thereafter, on June 26, 1930, appellees wrote appellant in this way:

''On March 1, 1929, you engaged us (appellants) to handle your claim against the Receiver under the terms stated. The referee has made his report after a lengthy hearing on all these claims (appellant's and others) and has allowed your claim as a general claim.

''As to what will be paid thereon (full payment not being at all likely), we are unable to determine until probable further litigation in this matter is ended and the total amount of preferred claims is ascertained. We are, however, calling this decision of the Referee's to your attention at this time.''

Afterwards the district court approved the Referee's report, and appellant's claim was finally allowed in the amount last-named. Following appellee's statements to appellant that the claim had been allowed by the Referee, a Mr. Goldstein, secretary and treasurer of the appellant company, came to Sioux City and interviewed appellees. A man named Ackerman, in Sioux City, apparently had written appellant about this time,

offering them approximately twenty per cent on its claim. Gold-stein, it seems, came to Sioux City for the purpose of investigating the situation, and while here called upon appellees. He complained because appellant's claim had not been allowed as preferred rather than general. Explanation was made by appellees to the effect that the claim was such that preference thereof could not be obtained.

On July 7, 1930, appellees wrote appellant concerning the fact that its claim could not be allowed as preferred, and explained to them the reason therefor. Then, for the first time, appellant objected to the attorney fees. Referring again to the contract between appellant and appellees, it is obvious that the fees were not based upon the contingency that the claim should be allowed as preferred. The alleged ground for appellant's objection to the attorney fees seems to be based on a conversation which Goldstein had with the assistant receiver. While testifying, Goldstein stated:

"I asked him (the assistant receiver) whether attorneys were necessary or not in this case, and he (the assistant receiver) didn't think there was a necessity for attorneys at the time. He thought everything was going along all right."

Appellant refused to pay appellees the attorney fees named in the agreement, and the latter filed a lien in the receivership proceedings. Furthermore, appellees, for the purpose of foreclosing the lien, filed a petition of intervention in the receivership proceeding, to which appellant answered, raising various defenses. In brief, these defenses are that the contract was procured by fraud and is the result of a mistake and misunderstanding of facts on appellant's part. Likewise appellant declares that the fees named in the contract were so large as to shock the conscience of an equity court. When the cause was submitted to the district court, that tribunal found for the appellees, and against the appellant. A reversal of that judgment and decree is asked on the grounds named in the appellant's answer. No denial is made by appellant that the foregoing letters were written, nor is it denied by appellant that under the contract set forth in those letters, appellees performed services in obtaining the allowance of the aforesaid claim.

Consideration will now be given to appellant's propositions.

I. Fraud being alleged, appellant declares that the burden of proving good faith and a valid consideration is upon appellees. This is true, appellant urges, because the attorneys solicited the business from their prospective client.

Underlying appellees' argument is the theory that attorneys occupy a fiduciary relationship to their clients. Whatever the law may be in that regard, we do not now decide, for it is enough to say that when the claim in question was solicited by the appellees the relationship of attorney and client did not exist. Such relationship did not come into existence until appellees' proposition was accepted by appellant. Edler v. Frazier, 174 Iowa 46; Coughlon v. Pedelty, 211 Iowa 138; Elmore v. Johnson, 143 Ill. 513; Moran v. L'Etourneau, 76 N. W. (Mich.) 370. Quoted excerpts from Edler v. Frazier (174 Iowa 46), supra, reading on page 52, will illustrate the thought at this juncture:

"If the relationship of attorney and client had been established before this agreement was entered into, it may be admitted that interveners would be required to make clear showing of their good faith in the transaction; but, generally speaking, this rule does not apply with the same stringency to contracts by which that relation is inaugurated. * * *

" 'Before the attorney undertakes the business of his client, he may contract with reference to his services because no confidential relation then exists and the parties deal with each other at arm's length.' "

Again the same thought is expressed in Coughlon v. Pedelty, (211 Iowa 138), supra, reading on page 141:

"If we assume, without deciding, that if this contract had been entered into by and between the plaintiff and the defendant at a time when the relation of attorney and client existed, the rule of burden for which the appellant contends would obtain, yet the rule has no application in this case, for no such relation existed between the parties prior to the making of the contract."

Manifestly, fraud is not presumed under the facts here, and the burden is upon appellant to prove that allegation.

II. Has the appellant met the burden of proof thus cast upon it? Obviously not. The basis for the alleged fraud is said to be in the fact that appellees, in soliciting the business, did not

inform appellant that practically no work was required in establishing the claim.

While appellees succeeded in finding evidence in the receiver's records to establish appellant's claim, yet that fact in and of itself does not indicate fraud. Appellant knew more about its claim and the evidence required to support it than did appellees at the time the contract was made. A resistance was filed to the claim by the attorney for the receiver. Appellees could not presume that the receiver's attorney was not in good faith in making that resistance. The filing of the resistance to the claim alone indicated that the receiver's attorney was in good faith in alleging the defense. It was perfectly right for appellees to assume that the receiver intended to make the defense named in the resistance. If the facts alleged in that resistance were not true, appellant had more information concerning that fact than did appellees. Certainly if appellees had not discovered sufficient evidence in the receiver's records it would have been necessary to take depositions in Chicago. And if not, appellant would have been required to bring its records and witnesses to Sioux City. Complaint therefore is made by appellant not because appellees failed in accomplishing the required result, but rather on the ground that the latter obtained the result without much effort. It contends that appellees should have informed them in the beginning that the work would be easy.

Clearly, appellees could not have imparted such information because they did not have it. Under the entire record, it is very evident that appellent has not established fraud in the inception of the contract. No fraud whatever is shown.

III. Regardless of the fraud, it is further argued by appellant that both parties were mistaken concerning the amount of work to be done when the fee arrangement was made. This defense is predicated upon the allegation that both parties contemplated extended litigation. But the same was not necessary because of the receiver's willingness to allow all claims shown by his records to be just and legal.

When the contract was entered into, however, neither party knew what the receiver was going to do or what his books might show. At that time the indication was that the receiver always would resist appellant's claim. According to the resistance filed by the receiver through his attorney, the indication was that the

claim might be defeated. Many times in the trial of lawsuits, the final result is accomplished quite easily although every indication before the end is that there will be serious and extended litigation. In the case at bar the fee was contingent regardless of the work demanded of appellees. Appellant was interested in the result, not in the method of accomplishing the same. Had litigation continued for months, or only a day, this fee would have been the same. There is no mistake about that, and appellant well understood the situation. It was explicit in its statement that the fee must be contingent, and if nothing could be recovered, no fee would be paid. The litigation may have been long and troublesome, yet if appellees lost they could recover no fee. Such contingency was well understood by appellant. Of course, success might come to appellees easily through the trend of events. That was known by both parties when the contract was entered into. Naturally appellant could have refused to make the agreement and employed other counsel on a different fee basis, but, fully understanding the situation, it entered into the contract and there was no mistake on either side. Hence this defense is not available to appellant.

IV. Nevertheless, appellant further argues that the fee is so large in comparison with the work done that fraud is implied. This alleged extravagant fee, appellant maintains, will shock the conscience of an equity court. Therefore it asks that the contract be set aside.

Undoubtedly a fee arrangement might be so unfair as to indicate fraud and shock the conscience of a court, but that situation does not exist here. If appellees had worked for months and finally lost, would appellant volunteer compensation? Quite unlikely. A contingency was present. No one knew the result. Consequently, if the desired end was reached more easily than anticipated, it cannot be said that this particular fee is so great as to show fraud. McIntosh v. Bach, 62 S. W. (Ky.) 515. Plainly appellant had no objection to the fee until it learned that appellees were successful. Whatever the law may be under other facts and circumstances, it is certain that this fee is not unpermissibly large. Coughlon v. Pedelty (211 Iowa 138), supra (local citation 141). That is true even though the business was solicited by appellees in the manner and way before explained. Appellees' solicitation of this business did not occur until after

the litigation had been started. To put the thought differently, appellees offered to defend appellant in litigation already commenced. There is nothing champertous growing out of a contract entered into under such circumstances. Proper solicitation of this kind is not objectionable if conducted in an orderly and honest manner. See, as having some bearing upon the situation, Chreste v. Louisville Railway Company, 180 S. W. 49 (Ky.); Johnson v. Great Northern Railway Company, 151 N. W. (Minn.) 125. Therefore, there is no reason why the one-third contingent fee established by the district court should not stand.

Accordingly the judgment and decree of that court should be, and hereby is, affirmed.—Affirmed.

ALBERT, EVANS, MORLING, and GRIMM, JJ., concur.