D. L. NORMAN, Appellant, v. W. T. BENNETT, Appellee.

No. 41476.

January 17, 1933.

Rehearing Denied May 15, 1933.

Ray P. Scott, for appellant.

W. D. Kearney, for appellee.

Kindig, C. J.—This was a special proceeding commenced by D. L. Norman, the plaintiff-appellant, under section 11608 of the 1927 Code, to recover from W. T. Bennett, the defendant-appellee, $600 in cash which the latter, as attorney, collected for the former, as a client, from the clerk of the Marshalltown municipal court.

Such $600 in cash previously had been placed with the clerk as a bond in a criminal case to secure the liberty of the appellant. Two criminal cases were pending at the time against the appellant. The one involved a charge of driving an automobile at a rate of speed prohibited by a Marshalltown ordinance, and the other had to do with the offense of illegally transporting intoxicating liquors, contrary to the state statute. A cash bond of $30 was posted in the speeding charge, and another cash bond of $600 was given in the liquor case. In both cases, the appellant was represented by the appellee, an attorney at law, residing in Marshalltown.

These two cases were disposed of in the following manner: First, the appellee pleaded guilty for the appellant in the speeding case, and used the $30 cash bond therein posted to pay the fine and costs accordingly imposed upon the appellant; and, second, the appellee, at the same time, obtained the dismissal of the intoxi-

cating liquor charge without the payment of a fine or costs. After the municipal court dismissed the intoxicating liquor charge in the manner and way aforesaid, the appellee collected for appellant, from the clerk of that court, the $600 in cash previously posted as a bond in the intoxicating liquor case. Following such collection of the proceeds of the $600 cash bond, the appellee retained the money as a fee, according to the terms of a written contract. It appears that in an alleged written contract purporting to be dated September 26, 1927, the appellant agreed to give the appellee, for his attorney fees, any and all portions of the $600 bond money not required to pay fines or costs in the criminal proceedings.

Denying the right of the appellee, however, to retain the money under the contract, the appellant commenced said special proceeding on June 14, 1930, to require the former to account for, and turn over to the latter, the $600 thus collected from the clerk, as before explained. The municipal court denied the relief, and the appellant appeals.

On the appeal it is claimed by the appellant that the contract for attorney fees was obtained by fraud and misrepresentations, that the alleged contract is champertous and void, and that the contract is against public policy because it was a gambling contract and provided that the amount of the fees was to depend upon the attorney's influence with the court.

These propositions will now be considered in the following order:

I. As previously indicated, the appellant claims that the written contract above named was procured through the appellee's fraud. Such fraud arose, the appellant contends: First, because when the contract was obtained the appellee pretended that the prosecutions of the foregoing cases were pending, when, as a matter of fact, they had been dismissed; and, second, because the appellee pretended that the charges against the appellant were serious, when in fact, under the circumstances they were not.

According to the appellant, the contract was signed on Wednesday, September 28, 1927. A judgment of dismissal was entered in the intoxicating liquor case on the preceding Tuesday. Likewise, on that Tuesday a fine of $25 had been imposed in the speeding case and costs assessed in the sum of approximately $5.00. Both cases, then, the appellant contends, were disposed of on Wednesday when he signed the written contract at appellee's request.

Contrary to the appellant's contention, the appellee maintains that the written contract for the attorney fees was signed not on Wednesday but on the preceding Monday. The contract upon its face bears the date of Monday. Consequently there is a conflict in the evidence upon this question. Witnesses were produced by each party and testimony taken on this subject. Moreover, experts testified at the trial that, although the appellee received $30 as a retainer at the inception of his employment, yet the additional sum of $600 received by him under the written contract was a fair and reasonable fee for the legal services performed. This fee would be fair and reasonable, the experts declared, regardless and independent of the written contract. The appellee obtained a bond for the appellant and secured a dismissal of the intoxicating liquor charge with the understanding that a plea of guilty was to be entered in the speeding case. Evidence was introduced by the appellee also indicating the seriousness of the prosecution of the criminal charges against the appellant. While it is true that the appellant submitted evidence indicating the contrary, yet this again presented a jury question.

Under the entire record, the municipal court found for the appellee on the questions involved. There being a conflict, then, in the evidence on the questions under consideration, this court, in this special proceeding, is bound by the finding of the municipal court. Union Building & Savings Association v. Soderquist, 115 Iowa 695, 87 N. W. 433; Phoenix Co. v. Sinclair, 169 Iowa 564, 151 N. W. 462.

■ II. Furthermore, it is argued by the appellant that, regardless of the foregoing conclusion, the judgment of the municipal court should be reversed because the above-mentioned written contract is champertous and void. Whether the contract in the case at bar comes within the definition of champerty, we do not now decide. Under the record, it is not necessary to determine this question. The appellant did not raise this proposition in the municipal court. As before stated, the appellant in the municipal court sought to set aside the written contract for attorney fees on the theory of fraud. By way of answer, the appellee justified his retention of the $600 under and by virtue of the written contract. At no time, according to the abstract, did the appellant set forth champerty as a defense.

■ On appeal in cases arising under a special proceeding

of the kind in question, the controversy is determined on errors assigned. Union Building & Savings Association v. Soderquist (115 Iowa 695, 87 N. W. 433), supra; Phoenix Co. v. Sinclair (169 Iowa 564, 151 N. W. 462), supra.

This court, on appeal, will not consider a question not raised in the trial court. Carlson v. City of Marshalltown, 212 Iowa 373 (local citation 383), 236 N. W. 421; New Amsterdam Casualty Co. v. Bookhart, 212 Iowa 994 (local citation 1001), 235 N. W. 74, 76 A. L. R. 897; Duncan v. Rhomberg, 212 Iowa 389 (local citation 402), 236 N. W. 638. Generally, section 11209 of the 1931 Code requires the appellant to plead champerty when relying upon it as a defense (Disbrow v. Supervisors of Cass County, 119 Iowa 538, local citation 541, 93 N. W. 585; Allison v. Chicago & Northwestern Ry. Co., 42 Iowa 274, local citation 280), but in the summary proceedings here involved, section 11612 of the 1931 Code provides that the cause shall be determined "without written pleadings".

Assuming, then, that it was not necessary for appellant to file a written pleading setting forth champerty as a defense, nevertheless, if he desired to rely upon that defense, it was essential that he raise the issue in the trial court. He did not raise the defense in the municipal court, and, therefore, as before suggested, the issue cannot be presented here for the first time.

III. Again, it is contended by the appellant that the written contract for attorney fees is against public policy, and therefore, void, because: First, it is a gambling contract; and, second, it provided that the amount of the attorney's fees was to depend upon the attorney's influence with the court.

There is nothing in the record to indicate that the contract contemplated that the appellee should wrongfully or illegally attempt to influence the municipal court at Marshalltown. But whether the written agreement is a gambling contract or against public policy we do not now decide. Those questions were not raised in the court below, and hence will not be considered here. The discussion under division II of this opinion also applies here.

Wherefore the judgment of the municipal court must be, and hereby is, affirmed.—Affirmed.

EVANS, STEVENS, KINTZINGER, and DONEGAN, JJ., concur.

ALBERT, UTTERBACK, ANDERSON, and MITCHELL, JJ., dissent.

The minority adopts the following opinion:

This was a special proceeding commenced by D. L. Norman, the plaintiff-appellant, under section 11608 of the 1927 Code, to recover from W. T. Bennett, the defendant-appellee, $600 in cash which the latter, as attorney, collected for the former, as a client, from the clerk of the Marshalltown municipal court.

Such $600 in cash previously had been placed with the clerk as a bond in a criminal case to secure the liberty of the appellant. Two criminal cases were pending at the time against the appellant. The one involved a charge of driving an automobile at a rate of speed prohibited by a Marshalltown ordinance, and the other had to do with the offense of illegally transporting intoxicating liquors, contrary to the state statute. A cash bond of $30 was posted in the speeding charge, and another cash bond of $600 was given in the liquor case. In both cases, the appellant was represented by the appellee, an attorney at law, residing in Marshalltown.

These two cases were disposed of in the following manner: First, the appellee pleaded guilty for the appellant in the speeding case, and used the $30 cash bond therein posted to pay the fine and costs accordingly imposed upon the appellant; and second, the appellee, at the same time, obtained the dismissal of the intoxicating liquor charge without the payment of a fine or costs. After the municipal court dismissed the intoxicating liquor charge in the manner and way aforesaid, the appellee collected for the appellant, from the clerk of that court, the $600 in cash previously posted as a bond in the intoxicating liquor case. Following such collection of the proceeds of the $600 cash bond, the appellee appropriated the same to his own use, and claims it now as an attorney fee in the foregoing cases.

Hence, the appellant commenced the said special proceedings on June 14, 1930, to require the appellee to account for and turn over the $600 collected by him, as before explained. The municipal court denied the relief, and the appellant appeals.

I. It appears that on Saturday evening, September 24, 1927, the appellant, a young farmer, living near Marshalltown, while driving an automobile in that city, was arrested for exceeding the speed limit fixed by a city ordinance. Upon this occasion the appellant, immediately before his arrest, had escorted his lady friend to her home in Marshalltown, and, when arrested thereafter, was driving on a city street toward his own home. When the arrest was made,

the officer searched appellant's car and found therein an eight-ounce bottle of alcohol. Neither the appellant nor the lady before mentioned had used any of the alcohol. Because the alcohol had been found in the car, however, the officer making the arrest escorted the appellant to the county jail, where he was charged with two offenses. These offenses were: First, driving an automobile at an excessive rate of speed; and second, the illegal transportation of intoxicating liquor. This all occurred on Saturday night, September 24, 1927.

After his arrest, the appellant remained in the county jail until Monday morning, September 26, 1927. Sometime during the forenoon on Monday the appellant, through some stranger, communicated with the appellee, an attorney at law in Marshalltown. Up to this time the appellant had never known the appellee. A dispute arises concerning where the appellant met the appellee. According to the appellant's testimony, he met the appellee in the municipal courtroom. On the other hand, the appellee says that he met the appellant in the county jail. In any event, at this meeting the appellant employed the appellee as his attorney to make defense for him in the two criminal charges. Accordingly, the appellee appeared for the appellant in both criminal cases and entered for the latter in each a plea of not guilty.

As soon as the appellee had thus appeared and pleaded for the appellant in these criminal cases, he endeavored to procure appearance bonds for his client. It was suggested by the appellant that an arrangement could be made with the bank at Union, where the appellant transacted business, to cash checks for cash appearance bonds. The bond in the speeding case was fixed at $30, and the bond in the intoxicating liquor case was set at $600. At the direction of the appellant, therefore, the appellee telephoned to the bank at Union in reference to cashing the checks in order that the cash bonds might be furnished. When thus requested to cash the checks, the bank immediately consented. Consequently the appellant drew two checks payable to the clerk of the municipal court—the one was for $30 and the other for $600.

Upon the receipt of the checks, the clerk cashed each, and the money received on the $30 check was held as a cash bond in the speeding case; and the funds obtained on the $600 check were held as a cash bond in the intoxicating liquor case. Immediately after the execution of these checks, the appellant was released from

.jail. He then appeared at the municipal clerk's desk to obtain the property taken from him by the officers at the time of the arrest. Among this property was $32 in cash. The appellee took $30 of that money and permitted appellant to obtain $2.00 thereof. As the appellee thus took the $30, he informed the appellant that the money was for his fees in the above-mentioned cases. Following this transaction, the appellant declares he obtained his automobile and went to his home in the country.

On Tuesday, September 27, 1927, the appellee, as attorney for the appellant, conferred with the judge of the municipal court concerning the disposition of the two criminal cases. After this conference, the municipal judge agreed to accept a plea of guilty in the speeding case, and assess against the appellant a fine of $25, together with approximately $5 in costs. The judge at the time, according to the appellee, was busy, and said he would make the entry later. However that may be, the judge did, on Tuesday, September 27th, enter a judgment fining the appellant and assessing costs against him in the speeding case. In accordance with the above-named recommendations made by the appellee, at the conference on Tuesday, the 27th, the municipal judge on that day dismissed the intoxicating liquor charge without either imposing a fine or assessing costs. Apparently the municipal judge, at the aforesaid conference with the appellee on Tuesday, stated to the latter that the transportation charge, considering the amount of intoxicating liquor found, was "too minute a matter to be worthy of the time of any court". When entering the judgment of dismissal in the intoxicating liquor case, the municipal court wrote on the calendar: "Dismissed by the court as being too minute a matter to be worthy of the time of any court. Bond released."

It is claimed by the appellee that he learned on Wednesday that the municipal court had disposed of appellant's cases as it had agreed to do on the previous Tuesday. According to the appellee, he received from the clerk of the municipal court, on Wednesday, September 28th, the city's check for the $630 which previously had been deposited as cash bonds in the two criminal cases. Whereupon the appellee delivered to the city clerk his own check for the fine and costs in the speeding case. Although the appellee thus collected the net amount of approximately $600, he at no time delivered any part thereof to the appellant. Because of these circumstances, it is claimed by the appellant that the appellee, having

been paid $30 for his services on Monday, September 26, is not entitled to any further compensation.

But it appears, however, that in an alleged written contract purporting to be dated September 26, 1927, the appellant agreed to give the appellee, as his attorney fees, any and all portions of the $630 bond money not required to pay fines or costs in the criminal proceedings. It is contended by the appellant that he signed this written contract on September 28th, rather than on September 26th. He claims, also that he signed it under a misapprehension of the facts, and that his signature thereto was obtained by the appellee through fraud and misrepresentations. According to the appellee, the contract was signed on Monday morning, the 26th of September, 1927. Although appellee told the appellant before the contract was signed that it might be possible to plead guilty to the speeding charge and obtain the dismissal of the intoxicating liquor case, yet, in addition thereto, the former impressed upon the latter the seriousness of the situation. When advising his client, the appellee told him that the liquor charge in question carried a minimum fine of $300 and three months in jail. At this time in the proceedings the appellant was nervous and anxious to return to his farm work. So, too, he feared that his lady friend might become involved, and desired to avoid publicity. The appellee, when employed, told the appellant that he could not tell what the attorney fees would be in advance. He suggested to the appellant, however, that fair treatment would be accorded. Consequently, the appellant expected fair treatment when signing the contract.

It is claimed by the appellant also, as before stated, that, although the instrument was dated September 26, 1927, he actually signed it on Wednesday, the 28th of the month. In any event, whether the contract was executed on Wednesday or Monday, it is apparent that the same was signed by the appellant after he had employed the appellee to appear for him in the criminal cases. A preponderance of the evidence indicates that the contract was signed by the appellant on Wednesday, September 28, 1927, rather than on Monday, September 26th. On Monday, after leaving the municipal court building, the appellant declares that he did not go to the appellee's office at all. Likewise the appellant says he was not in Marshalltown on Tuesday, September 27, but on that day he consulted another lawyer at Eldora. This lawyer, thus consulted by appellant on Tuesday, phoned from Eldora to the appellee at Mar-

shalltown. Nevertheless, the appellee testified that the contract was executed on Monday, as distinguished from Wednesday. He is somewhat corroborated by his stenographer. She, however, relies on the date named in the contract rather than on an independent recollection of the facts. As a matter of fact, therefore, the stenographer's testimony does not furnish much corroboration for the statements of the appellee. When filing his answer in this cause, the appellee pleaded that the aforesaid written contract was signed "on or about" Wednesday. That pleading remained unamended from September 16, 1930, until August 19, 1931. In a later amendment, the appellee states he erred when alleging that the contract was executed on Wednesday. At the submission of the cause in this court, the appellee argued that the use of the word "Wednesday" in his pleading was a mistake, and that, although he thus named the day as Wednesday, he gave the proper date to wit, September 26, 1927, which in fact was Monday. This explanation, however, does not quite meet the situation, because in the original pleading the appellee refers to Monday as the 24th day of September, 1927, while he referred to Wednesday as the 26th day of September. Obviously, then the appellee intended to plead that the written contract was made on Wednesday, as distinguished from Monday, because he names both Wednesday and Monday in his pleading. Considering the entire record, it is apparent that the written contract for the attorney fees was executed by the appellant on Wednesday, rather than on Monday.

So, at the time the contract was executed on Wednesday, the fine and costs had been assessed in the speeding case and the intoxicating liquor charge had been dismissed without fine or costs. The disposition of those cases, as before explained, occurred on Tuesday. There was no case pending in the municipal court against the appellant at the time the appellee had him execute the contract aforesaid on Wednesday. It is not clear in the record whether the appellee had paid the fine and costs for the appellant in the speeding case and had collected for him the proceedings of the cash bonds at the time the contract was signed on Wednesday. In any event, the appellee knew that the municipal court had agreed to dispose of the cases formerly pending against the appellant in the manner and way aforesaid. If the bond money had not actually been collected at the time by the appellee and the fine and costs paid by him, the work necessary to complete the transactions was a mere

matter of routine. Although the criminal charges had in effect thus been disposed of on Tuesday, the appellee on Wednesday, when obtaining the contract from the appellant, pretended to him that the criminal cases were still pending for prosecution. Therefore, it is claimed by the appellant that the contract was obtained by the appellee through fraud and misrepresentations. Such misrepresentation was the false pretense on appellee's part that the cases were still pending against the appellant when he signed the contract. As a matter of fact, the cases had been dismissed by the municipal court on the previous Tuesday, as above indicated.

To controvert this claim, it is the contention of the appellee that on the Tuesday before the Wednesday in question he informed the appellant that the municipal judge had agreed to dispose of the cases in the manner and way before explained. On the contrary, the appellant testified that the appellee did not so inform him. Moreover, the appellant contends that he was not in Marshalltown on the aforesaid Tuesday. He says there was no occasion for his being in Marshalltown on that date, because the cases were set for trial on the following Wednesday. This the appellant says he learned before he left Marshalltown on Monday after posting the bond and being released from jail. Believing that the cases were to be tried on Wednesday, the appellant, in the morning of that day, came to Marshalltown for the purpose of attending court, and went to the office of the appellee. The appellant was late in arriving because muddy roads delayed him. When the appellant arrived there, the appellee did not inform him that the municipal court, on the day before, had agreed to dismiss the cases, but rather than so doing presented the contract above named for the appellant's signature on the representation that the cases were still being prosecuted.

While testifying, the appellee said, as before suggested, that the appellant was in Marshalltown on the aforesaid Tuesday when he received the information that the cases would be disposed of. This information, the appellee declares, was imparted by him to his stenographer, who, in turn, notified the appellant. That testimony of the appellee is corroborated by the statements of his stenographer. The stenographer, however, had no written memorandum concerning the fact that the appellant was informed about the disposition of the cases on Tuesday. She stated that she had not thought of the details concerning the information thus imparted

to the appellant about the cases being dismissed until her mind was refreshed. Her mind was thus refreshed by the appellee when he procured her for a witness in this case. All the corroborating circumstances sustain the appellant in his contention that he did not have the information concerning the disposition of his cases when he signed the aforesaid contract. It is apparent that he would not have signed the contract had he known that the cases were already dismissed. As before said, he was not in Marshalltown on Tuesday, as claimed by the appellee. On that day the appellant was in Eldora conferring with another lawyer. Therefore it is apparent that the appellee procured the appellant's signature to the contract on the pretense that the cases were still pending for prosecution.

While it appears that the criminal cases, during the negotiations Monday, had been set for trial on Wednesday, as before indicated, yet there was no trial on the day set because the cases had been dismissed on Tuesday. However, the appellant was in ignorance of such disposition of the cases, as before said, when he signed the contract in appellee's office on Wednesday. There was discussion between the appellant and the appellee on Wednesday concerning what was the best disposition to make of the criminal cases. The appellant testified: "I did not want to go to trial Wednesday morning unless there was some show of winning." It seems that the appellant was in the appellee's office about an hour and a half Wednesday morning, but only talked to the latter about twenty minutes when the contract was signed. Apparently, after the contract was signed, the appellee left the appellant in the office alone until about noon, when the stenographer informed him he "could leave". According to the rather obscure record, it would appear that the appellee thus left the appellant on the pretense that he was leaving the office for the purpose of obtaining a continuance or making other disposition of the criminal cases which at that time already had been dismissed. When the appellee's stenographer told the appellant that he could go home, she did not inform him that the cases had been dismissed. Not knowing that the cases had been dismissed, the appellant. when leaving the appellee's office, relied on the latter to tell him when to return for the purpose of the trials. Nevertheless, the appellant at no time thereafter received a communication from the appellee. On the other hand, the appellant learned of the disposition of the cases and the release of the $600 bond through the Marshalltown newspapers.

A carbon copy of an ostensible letter alleged to have been written by the appellee was introduced into the record by him for the purpose of showing that he informed appellant, the addressee of that letter, about the disposition of the cases and the retention of the $600 as attorney fees, according to the contract. The appellant denies that he ever received the original of the alleged letter. Moreover, corroboration for the appellant's denial in this regard may be found in the fact that the purported letter is dated Tuesday, September 27, while the appellee claims not to have learned until Wednesday, the 28th of September, that the cases were dismissed. According to the record, the appellee did not know, when the letter is purported to have been written, that the municipal judge would finally dispose of the cases in the manner and way before mentioned. There had been talk between the appellee and the municipal judge about the disposition of the cases in the manner and way before set forth. But the appellee left the courthouse without knowing that the judge finally disposed of the cases. He did not learn, as before said, that the municipal judge had actually assessed a fine in one case and dismissed the other, until the day after the date of the letter. As before, the appellee again seeks to explain away the discrepancy by saying that the date was a mistake. On several occasions, as previously indicated, the appellee likewise sought laboriously to explain away detrimental facts on the theory that they were mistakes.

A great deal of time elapsed between the date the appellant learned, through the newspapers, of the disposition of the criminal cases, and the day when the present proceedings were commenced. An explanation for the delay may be found in the following circumstances: The appellant was expecting a report from the appellee. When no report was made, he pondered over the matter for some time and then conferred with his father. Finally the father advised the employment of another attorney for the purpose of obtaining the moneys collected by the appellee. Whereupon the appellant, or his father, consulted Mr. Davis, an attorney, then living at Eldora. Davis wrote a letter to the appellee wherein he inquired about the funds in question. Later the appellee replied to the Davis letter. Apparently Davis considered the appellee's reply a satisfactory explanation of the transaction. There is some discrepancy between the letter written by the appellee to Davis and the appellee's answer and claim in the case at bar. In the letter

to Davis, the appellee declared, among other things: "The County Attorney and his assistant became very peeved and openly threatened on several occasions to go over the head of the Municipal Judge and take this matter up with the Grand Jury. I spent considerable time in getting the agreement to stand."

No claim of that kind is made in the present controversy. After the attorney Davis apparently refused to assist the appellant farther, he was in doubt about what to do. Finally he employed Mr. Scott, his attorney in this case. The case was started June 14, 1930, and pended in the municipal court until August 20, 1931, when the trial commenced.

Following our review of the whole record, we are constrained to hold that the appellant's version of the facts is correct. When the appellant and the appellee entered into the written contract above named, the relation of attorney and client existed. See State ex rel. Gibson, Attorney-general, v. American Bonding & Casualty Company (Jepson, Struble & Sifford v. National Glass Co.), 212 Iowa 1052, 237 N. W. 360. It is said by the appellant that the appellee procured the contract through fraud and misrepresentations. Under the circumstances, then, it is incumbent upon the appellee to make a clear showing of his good faith in the transaction. The burden of proving consideration and good faith under these conditions is upon the attorney. Reeder v. Lund, 213 Iowa 300, 236 N. W. 40; Healy v. Gray, 184 Iowa 111, 168 N. W. 222; Edler v. Frazier, 174 Iowa 46, 156 N. W. 182; State ex rel. Gibson, Attorney-general, v. American Bonding & Casualty Co., et al., and Jepson, Struble & Sifford v. National Glass Co. (212 Iowa 1052, 237 N. W. 360), supra; 6 Corpus Juris, section 259, page 710; Shropshire v. Ryan, 111 Iowa 677, 82 N. W. 1035; Donaldson v. Eaton & Estes, 136 Iowa 650, 114 N. W. 19, 14 L. R. A. (N. S.) 1168, 125 Am. St. Rep. 275; State v. Johnson, 149 Iowa 462, 128 N. W. 837; Waddell v. Basket Co., 159 Iowa 736, 140 N. W. 805; Bolton v. Daily, 48 Iowa 348.

Not only did the appellee in the case at bar fail to carry the burden of showing that the contract was entered into in good faith, but, on the other hand, the appellant proved, by a preponderance of the evidence, that the agreement was not so consummated. Consequently the written contract cannot be used by the appellee as a basis upon which to retain the $600 cash proceeds of the bond in the intoxicating liquor case.

II. While it is true that the facts are here found contrary to the finding of the municipal court, yet in cases between attorney and client, under this statute involving the good faith of an attorney to his client and the forfeiture of all or a part of his fees for the lack of such good faith, we are not bound by the trial court's conclusion.

An attorney is an officer of this court. Section 11251, 1927 and 1931 Codes. Therefore, in cases of this kind, "the court is simply called upon to enforce the plain duty of its officers (attorneys at law), and, without the aid of a jury or written pleadings, enter judgment *according to the very right of the matter*". (Italics are ours.) Downs v. Davis, 113 Iowa 529, local citation 531, 85 N. W. 781. Of course, where, in any case, the conduct of the attorney is consistent with good faith, and he has not forfeited by bad faith his right to a fee for his services he has rendered his client, the trial court's finding determining whether he has earned a fee, and, if so, the amount thereof, has the effect of a jury's verdict. That phase of the controversy, therefore, would not be triable *de novo* in this court. Union Building & Savings Association v. Soderquist, 115 Iowa 695, 87 N. W. 433; Phoenix Co. v. Sinclair, 169 Iowa 564, 151 N. W. 462.

In the case at bar, however, the questions involved are: First, the good faith of an attorney to his client; and second, the forfeiture of the attorney fees because of bad faith to such client. Hence, the attorney being an officer of this court, we are not bound, when reviewing his conduct, by the finding of the trial court. For a case having some bearing on this question, see Donaldson v. Eaton & Estes (136 Iowa 650, 114 N. W. 19, 14 L. R. A. [N. S.] 1168, 125 Am. St. Rep. 275), supra. If this were not true, this court, being bound by the finding of the court below, could not control its own officers. The distinction between this and other cases involving a different forfeiture is that we are here dealing with our own officers. A forfeiture, generally speaking, may arise out of an express contract or a statute providing therefor, but those sources do not account for the origin of the forfeiture in the case at bar. Here the forfeiture is not provided for by contract or by section 11608 of the 1931 Code, but arises extraneous thereto out of the inherent power of this court. From the early days of the common law down to the time of the Iowa Codes courts have had, and under the Iowa statutory procedure this court now has, inherent power

to determine and control the conduct of attorneys at law and to punish them for misconduct. This theory is not without support in the decisions of this court. In State v. Mosher, 128 Iowa 82, reading on page 87, 103 N. W. 105, 107, 5 Ann. Cas. 984, we said:

"The power to *punish* or exclude from practice, then, has always been regarded as inherent in the court. * * *" (Italics are ours.)

Again on page 88 of 128 Iowa, 103 N. W. 105, 107, this court further declared in the Mosher case:

"As said, *independent of statute* each court might have exercised its inherent power of *punishing* and removing its officers, and the effect of the legislation cited was merely to recognize and confirm the power which previously existed." (Italics are ours.)

See State v. Metcalfe, 204 Iowa 123, 214 N. W. 874.

The particular phase of the controversy here involved, then, is triable *de novo* in this court, under the aforesaid special proceeding.

III. But the appellee argues that, although he is not allowed to retain the $600 under the aforesaid contract, he may keep the same because under quantum meruit the amount is fair and reasonable for the services rendered. Conflicting evidence was introduced by the respective parties on this question.

The appellee, in count I of his answer, pleaded the contract, and in count II thereof he set forth a defense based on the theory of quantum meruit. It was necessary for the appellant to bring this special proceeding to recover from the appellee the proceeds of the bond received by the latter from the clerk of the municipal court. Because of the fraud and unfairness on the part of the attorney, discussed in division I of this minority opinion, the appellee is prevented from recovering any fees in addition to the $30 received at the time the relationship of attorney and client first arose. It is conceded by the appellant that the appellee is entitled to that $30 fee, and the prayer in appellee's answer covers the aforesaid $600 only. Under the record, the appellee is not entitled to retain any part of the $600. 6 Corpus Juris, pp. 722, 723, section 290; Larey v. Baker, 86 Ga. 468, 12 S. E. 684. See Barngrover v. Pettigrew, 128 Iowa 533, 104 N. W. 904, 2 L. R. A. (N. S.) 260, 111 Am. St. Rep. 206; Donaldson v. Eaton & Estes

(136 Iowa 650, 114 N. W. 19, 14 L. R. A. [N. S.] ·1168, 125 Am. St. Rep. 275·), supra.

Wherefore, the appellant is entitled to recover from the appellee the aforesaid $600, plus interest and costs, and the judgment of the municipal court should be reversed and the cause remanded.