### In re HADWIGER et al.

No. 23538.   Dec. 5, 1933.

Rehearing Denied Feb. 6, 1934.

Ira A. Hill, Miley, Hoffman, Williams, France & Johnson, and Ralph G. Thompson, for petitioners.

J. H. Everest and John H. Cantrell, for respondent.

McNEILL, J. This action involves disbarment proceedings against Gus Hadwiger and Robert L. Hadwiger, referred to herein as petitioners. The Honorable Peyton E. Brown, an attorney at law, residing in the city of Blackwell, Kay county, Okla., at the direction of the Board of Governors, filed a complaint against said petitioners, wherein they are charged severally and jointly of conduct unbecoming a member of the bar of this state, and that they have been guilty of willful violation of the duties of an attorney at law in the following respects:

"1. That they have solicited business as attorneys at law in probate matters and in civil matters.

"2. That they have been guilty of committing direct fraud upon their own clients.

"3. That they have purchased unpaid and unsatisfied judgments contrary to the laws of this state; and contrary to and in violation of the orders of court have sold property at mortgage foreclosure sale subject to incumbrances which the mortgage foreclosure judgment canceled and annuled.

"4. That they have committed a fraud upon the county court of said county and state.

"5. That they have so arranged many probate cases as to have one member of the firm act as an administrator, executor or guardian, as the case might be, and the other member of said firm to act as attorney for such administrator, executor or guardian, as the case might be, and in such cases have each charged and collected fees for their services in such respective capacities and have together shared and divided such fees.

"6. That they have been guilty of collecting fees in probate matters without the approval and in direct and willful violation and disregard of and obedience to the orders and instructions of the county court of said county and state.

"7. That they have been guilty of extortion and oppression in the charging and collecting of fees in probate matters.

"8. That they have been guilty of changing, altering, and falsifying the records of the county court of said county and state.

"9. That they have been guilty of stirring up, soliciting, instigating and prosecuting litigation against defendants of financial means for the purpose and with the intent of harrassing and compelling such defendants to purchase their peace.

"10. That said Robert L. Hadwiger has been guilty of charging and collecting witness fees in the trial or trials of a cause or causes of action in which he was employed and paid as an attorney of record to act, and so acting in such case or cases."

In support of these charges, statements were set out under eight different counts. Petitioners filed an exhaustive answer to these charges denying and refuting the same in detail. Thereafter the Board of Governors appointed one of its members, the Honorable Sam Massingale, to conduct a hearing on these charges. A voluminous record resulted from these hearings, and the questions have been exhaustively briefed. Mr. Massingale made a report to the Board of Governors setting out the charges, the answer, the evidence, and his recommendations. After this report was received, the Board of Governors, on November 30, 1931, granted permission for a supplemental and amended complaint to be filed which contained three additional charges. A hearing was had on these additional charges at Alva, Okla., by the Honorable Horace McKeever, a member of the board, on December 22, 1931. After a hearing on these additional charges, Mr. McKeever reported the proceedings to the Board of Governors,

but made no findings and conclusions, nor recommendations on these additional charges. After a full and complete hearing, the Board of Governors made its findings of fact and conclusions of law and entered its order recommending suspension of Gus Hadwiger for a period of 30 days and disbarment of Robert L. Hadwiger.

Petitioners seek to review this order, contending that the findings of the Board of Governors are not supported by the evidence, are against the weight of the evidence, and are contrary to law. Petitioners contend that the disciplinary punishment recommended by the Board of Governors is too harsh and severe. Counsel have briefed the propositions contained in the various counts as cause No. 1, cause No. 2, and cause No. 3, etc.

Petitioners urge that they were denied due process of law on the theory that the Board of Governors was the informer, the accuser, the prosecutor, and the judge, and by reason thereof, the orders and judgment of disbarment or suspension are coram non judice and void.

No charge is made that any member of the Board of Governors had any personal interest in the outcome of the charges preferred against petitioners. The State Bar imposes upon the Board of Governors the duty of initiating and conducting investigations and recommending after a hearing upon the charges filed for misconduct against a member of the State Bar. Petitioners assert that the action of the Board of Governors in following the provisions of the State Bar Act is in violation of due process of law, granted to them by sections 6 and 7 of article 2 of the Oklahoma Constitution and by the Fifth Amendment of the Constitution of the United States, and by section 1 of the Fourteenth Amendment of the Constitution of the United States, and of article 6 of the Constitution of the United States. The constitutional questions are foreclosed against the contentions of petitioners. See State Bar of Oklahoma v. McGhee, 148 Okla. 219, 298 P. 580.

In the case of In re Peterson (Cal.) 280 P. 124, the Supreme Court of California, in speaking of the State Bar Act of that state, from which act the Oklahoma State Bar Act was closely modeled, and particularly section 26, which enjoins upon the board the duties of investigating misconduct, taking evidence relative thereto, and entering its order recommending disciplinary measures in a proper case, and thereafter certifying such recommendations to the Supreme Court, said:

"Action of Board of Governors of State Bar in recommending disbarment is not a final proceeding, but power of disbarment rests finally and solely with Supreme Court under State Bar Act. * * * Proceedings for disbarment of attorney under State Bar Act * * * does not deny due process, since power of disbarment rests finally and solely with Supreme Court under section 26, * * * and notice and hearing are provided for."

Upon the same question, the Supreme Court of Nevada, in the case of In re Scott, 292 P. 291, said:

"It is argued with vehemence that the statute is void, because it authorizes a member of any local administrative committee, or a member of the Board of Governors, to prefer charges against an attorney, and then to sit as a member of the committee, or board, for the consideration of the charges so preferred. We are not in accord with this contention. The powers conferred upon the board and local administrative committees relate to matters of great public concern, in which the members of the board and committee have no personal interest. They have no greater interest in the result of this proceeding than has any other member of the profession or any other member of the community entitled to protection against unscrupulous lawyers. In re Edwards [45 Idaho, 676], supra, citing McVicar v. State Board of Law Examiners [D. C. 6 F. (2d) 33], supra, and In re Jones, 159 App. Div. 782, 145 N. Y. S. 65."

See, also, State Bar of California v. Superior Court in and for Los Angeles County (Cal.) 278 P. 432; Golden v. State Bar (Cal.) 2 P. (2d) 325; In re Shattuck (Cal.) 279 P. 998; In re Gibson (N. M.) 4 P. (2d) 643.

In the case of In re Scott, supra, the Supreme Court of Nevada also said:

"But, if for the purpose of the State Bar Act the right to practice law is to be regarded as a property right, the statute meets every requirement of the Constitution. Provision is made for a full and complete hearing of all complaints lodged against a member of the bar, and for review before the Board of Governors, coupled with a review by the Supreme Court. The facts and the law both being subject to review and final decision by the Supreme Court, we do not consider that the petitioner was denied due process of law."

All the facts and circumstances regarding the proceedings for discipline, suspen-

sion, or disbarment as provided by the Oklahoma State Bar Act, including the recommendation of the Board of Governors, and the law applicable thereto, are subject to review and final decision by this court. Such proceedings under the State Bar Act do not deny due process of law.

We do not consider it essential, to arrive at a proper conclusion in this case, to treat in detail all the charges preferred against petitioners. Charge No. 11 appears to be a blanket charge incorporating all of the various charges against petitioners. No merit is given to this charge on the theory that the charges preferred against petitioners are either valid and meritorious or that they are without support. The charges to be proved must be clear and convincing. Discreditable facts, standing alone, are not sufficient. Fraudulent and dishonest motives must be proved.

It appears that petitioners have built up an extensive and lucrative practice. They are father and son, residing at Alva, Okla., and have been engaged in the practice of law in that city under the firm name of Hadwiger and Hadwiger. Gus Hadwiger was born of German speaking parents in Braunseifer, Moravia, Austria, May 31, 1869. Robert L. Hadwiger was born on July 17, 1902, in old Woods county, Okla., which is now Alfalfa county. The father, Gus Hadwiger, exhibits a most commendable record of loyalty, patriotic duty, and military service. Subsequent to his coming to the United States with his parents at the age of nine years, a perusal of his record shows the forward life of an energetic, thrifty, and frugal citizen who has endured great hardships and privation. The son, Robert L. Hadwiger, had been deprived of the hardships that his parents had endured. After completing a high school course, according to his history, he "entered the Northwestern State Teachers' College and completed the college course in March, 1923, and was awarded the degree of Bachelor of Arts, and had previously to this time been awarded a life certificate to teach in the state of Oklahoma.

"In March, 1923, he entered the Law School of the University of Montana, where he attended such school at Missoula, Mont., for the balance of that school year. He attended the Law School of the University of Missouri, at Columbia, Mo., and the Law School of the University of Colorado, at Boulder, Colo., in the study of law, and spent his last year in the Law School of the University of Oklahoma, at Norman, Okla., where he was granted the degree of Bachelor of Laws in June, 1925." He became a member of the State Bar of Oklahoma in that year, and after his admission engaged in the practice of law in partnership with his father, with offices at Alva, Okla.

In dealing with Robert L. Hadwiger, we particularly consider causes No. 6 and No. 10, respectively. The substance of the charge under cause No. 6 was that said petitioners were guilty of oppressive conduct in the matter of collecting fees for a client, growing out of a foreclosure suit in the district court of Woods county. It appears that Guy Everett owned a quarter section of land in Woods county; that he opened negotiations with his tenant, Hackney, to sell Hackney said premises; that Everett was at that time a federal prisoner in California, having been convicted of desertion from the army. Everett deeded this quarter section of land to Hackney and Hackney was to assume a mortgage on the land maturing in 1936. Shortly after this deed was executed, Everett conveyed this same land to his mother, and she in turn conveyed it to a man by the name of Anton Kurz. Hackney was in possession and Kurz sued in the district court to eject Hackney from the land. Hackney prevailed in the action. He was represented by petitioners. It also appears that Mrs. Kurz, wife of the plaintiff in the ejectment suit, purchased and took by assignment the outstanding real estate mortgage, which Hackney had allowed to become delinquent and in default, and after the trial of the ejectment action, which resulted in Hackney's favor, Mrs. Kurz brought suit for foreclosure of that mortgage. In the foreclosure action, petitioners represented Hackney. This mortgage foreclosure suit was settled without a trial. Mr. Massingale in his report to the Board of Governors stated:

"Robert Hadwiger negotiated the settlement. Mr. M. A. Holcomb, of Buffalo, was attorney for Mrs. Kurz in the foreclosure suit and received from Robert Hadwiger the amount called for in the mortgage, including attorney's fees of $225, though Robert Hadwiger tried to induce Mr. Holcomb to reduce the attorney's fee to $50. Subsequently Robert went to the office of Mr. Stevens in Alva, who had been of counsel for the plaintiff in the ejectment suit, and there met Guy Everett and his mother and made settlement with them of the amount due to Guy Everett by reason of his deeding the land to Hackney. In the settlement Robert Hadwiger insisted that his client had been put to the expense of both lawsuits by reason of Guy Everett executing the deed to his mother and insisted upon

and had either Guy Everett, or Mrs. Everett, or both of them, deduct from the $1,250 coming to them, the $225 attorney's fee which was paid to Mr. Holcomb, and other costs and expenses, all amounting to about $340. It is charged that this money that was held out by Robert Hadwiger was the money of Mrs. Everett and that she was poor, ignorant, and helpless, and that the settlement was unfair and dishonest and that in making the settlement Robert took advantage of her."

In his recommendation to the Board of Governors, he stated:

"The evidence shows that Robert Hadwiger drove a hard bargain in making this settlement with either Guy Everett or his mother, or with both of them, in the office of Mr. Stevens. Mrs. Kurz had a right to buy the mortgage and foreclose it, and it strikes me as being too remote to contend that Guy Everett's act in deeding the land to his mother was the cause of the foreclosure suit. Robert Hadwiger testified that, in his judgment, Mr. Holcomb and Mr. Stevens, attorneys connected with these cases, were parties to the scheme to impose upon his client. We take no stock in this statement by Robert Hadwiger."

Mr. Massingale, however, recommended on this charge that Robert L. Hadwiger restore to Guy Everett and Mrs. Everett, through A. J. Stevens, their attorney, $340 with 6 per cent, interest since April, 1930. As we view the record on this charge, we conclude that Robert Hadwiger did not conduct himself with proper dignity and honorable conduct due to his profession, and that his conduct with other lawyers was not characterized by that spirit of candor and fairness which is embodied in rule 26 of the rules of professional conduct of the State Bar of Oklahoma, to wit:

"The conduct of the lawyer before the court and with other lawyers should be characterized by candor and fairness."

Under rule No. 17 of the rules of professional conduct of the State Bar of Oklahoma, it is announced as follows:

"The office of attorney does not permit, much less does it demand of him for any client, violation of law or any manner of fraud or chicane. He must obey his own conscience and not that of his client."

We are of the opinion that Robert L. Hadwiger was guilty of oppression in coercing $340 from the Everetts at the time when Mrs. Everett and her son were in dire need, taking advantage of such conditions, refusing to pay the purchase price unless the $340 expenses were allowed to be retained by petitioners. At that time the Everetts were without means, and Guy Everett, being liable to another criminal charge, yielded to the oppressive conduct of Robert L. Hadwiger. His conscience should have spoken. There may be assignable reasons for the action of Robert L. Hadwiger in the interest of his client, but in the light of the record there is misconduct on the part of Robert L. Hadwiger. We find nothing, however, against the conduct of Gus Hadwiger in this connection.

We next consider cause No. 10, as applied to Robert L. Hadwiger. Under this cause, Robert L. Hadwiger is charged with a fraud upon the referee in bankruptcy, the Honorable John J. Hildreth, referee in bankruptcy in the Western District of Oklahoma, and upon the creditors of Eugene Green, a bankrupt. It was charged that on May 18, 1926, petitioners prepared the papers and closed out a deal with said Green and one Campbell, whereby said Green conveyed a quarter section of land to Campbell for a money consideration. That thereafter, on the same day, Robert L. Hadwiger received a certificate of deposit from the Alva State Bank in the amount of $3,692 for the said Green, which amount was to be used to pay off a certain mortgage due the Deming Investment Company of Oswego, Kan., on November 1, 1920; that thereafter, and on May 26, 1926, said petitioners prepared and filed a voluntary petition in bankruptcy in said bankruptcy showing said Green was the owner of a quarter section of land which he claimed as a homestead, subject to a mortgage of $3,500 and interest thereon in favor of said Deming Investment Company; that no mention was made in said bankruptcy papers of said sum of $3,692 which said Robert L. Hadwiger had deposited in the Alva State Bank for said bankrupt; that thereafter, and on July 8, 1926, the trustee in the estate of said Eugene Green, a bankrupt, having discovered said money, filed a demand for the money which was held by said Robert L. Hadwiger at the Alva State Bank.

Petitioners filed an answer denying that the money should be turned over to the creditors of said bankrupt and claimed that they held said money as trustee for the use and benefit of the Deming Investment Company. However, said petitioners subsequently prepared and filed on October 8, 1926, in said bankruptcy proceedings an amended schedule in bankruptcy wherein they admitted that they had in their possession the sum of $3,692 which they held as trustee for the use and benefit of the

Deming Investment Company. After a hearing before the referee in bankruptcy, a compromise was reached whereby said money was turned over to the trustee and to be applied upon said indebtedness of the said bankrupt. We consider this charge reflects upon the conduct of Robert L. Hadwiger. Robert L. Hadwiger had actual possession of the certificate of deposit. This deposit was made on May 18, 1926. On May 26, 1926, the petition in bankruptcy was prepared and filed; on May 29, 1926, it was nowhere indicated in the schedule that the petitioner in bankruptcy had received $3,692 from the sale of a quarter section of land to Campbell. Under the record, we find no justification for failing to reveal this asset in bankruptcy. The trustee in bankruptcy was entitled to this asset for the benefit of the creditors of the estate and should not have been required to compromise said asset. These are indubitable facts. Robert L. Hadwiger must be assumed to have had knowledge of these facts. There is merit to this charge as applied only to Robert L. Hadwiger.

Under the charge No. 8 petitioner Gus Hadwiger was found guilty of violating his oath and duty to his client in failing to notify Cris Sims, a devisee, under the will of J. H. Sims, deceased, of the change in the election on the part of the widow of said decedent to take under the laws of succession and descent in lieu of under the provisions of the will of said decedent. It appears that J. H. Sims made a will by the terms of which he left a life estate in a quarter section of land to his common-law wife, Maggie Sims, with the remainder to Cris Sims and Eliza Chambers, brother and sister. The facts relating to the execution and the probate of the will are set forth in Appeal of Sims' Estate, 162 Okla. 35, 18 P. (2d) 1077. It was charged that Cris Sims and Maggie Sims, after the decease of J. H. Sims, went to the office of Gus Hadwiger and engaged him to represent them in probate of the will of said decedent; that Maggie Sims, who had filed an election to take under the will, thereafter, without notice to Cris Sims, filed an election to take under the laws of succession under the laws of Oklahoma after withdrawing under her former election to take under the will. It was charged that this resulted in the extinguishment of the estate in remainder which had been devised under the will to Cris Sims and that by reason of the failure of Gus Hadwiger to notify the said Cris Sims of said election of Maggie Sims to take under the will, there was misconduct on the part of said Gus Hadwiger amounting to a violation of his oath as a lawyer.

Petitioner Gus Hadwiger contends that the relationship of attorney and client did not exist between him and Cris Sims and that he violated no duty which he owed to Cris Sims. It does appear that Cris Sims and Maggie Sims signed the petition for the probate of the will, which was prepared by Gus Hadwiger. It also appears that when they appeared at the office of said petitioner, Cris Sims knew that said decedent was surety on a note given by the son of Cris Sims and that this fact was not revealed to petitioner at the time he questioned said Cris Sims and Maggie Sims relative to the indebtedness which said decedent owed, and it is apparent that Cris Sims knew that this indebtedness remained unpaid. It is also apparent that Cris Sims exerted some kind of influence over Maggie Sims in the first instance to file an election to take under the will and that he was fully advised and knew of his rights in the premises in the event Maggie Sims did elect to take under the law. The record shows that Cris Sims could neither read nor write, and there is nothing to indicate that he ever received any personal or direct information from Gus Hadwiger that Maggie Sims had changed her election to take under the will instead of under the law. However, petitioner, Gus Hadwiger, testified that he requested Cris Sims' banker to notify Cris Sims of this change of election. The will was admitted to probate. Letters testamentary were issued to Maggie Sims. Petitioner acted as attorney for the administratrix. Final decree of distribution was entered depriving Cris Sims of any interest in the property without any personal knowledge on his part.

As we view this evidence on this charge, without entering into a detailed discussion, we are impressed with the conclusion that the conduct of petitioner, Gus Hadwiger, was not commensurate with the honor which his professional duty owed to Cris Sims. We do not believe from this record, however, that any ulterior motive prompted the action of said petitioner in failing to disclose and explain the changed conditions to Cris Sims; but as we view the proceedings under this charge, we are of the opinion that Gus Hadwiger violated a professional duty which he owed to Cris Sims, and for such misconduct he deserves a reprimand. We conclude that this opinion is sufficient to constitute such a reprimand.

Mr. Peyton Brown, who investigated the first eight charges preferred against peti-

tioners, made a recommendation to the Board of Governors which gives a generalization of the situation as existing in that jurisdiction, as follows:

"* * * It is an impressive fact that practically all of the lawyers of the Woods county bar whose acquaintance with the respondents and whose knowledge of their practices should be the closest and most intimate have joined in pointing out and condemning the improper conduct and unfair and unethical practices of these two lawyers. * * *

"That bar (Woods county bar) is strong and clean and composed, almost without exception, of high-class gentlemen and able lawyers. It appears that the respondents constitute the only discordant element, and this is unquestionably due to the objectionable methods of their practices as set forth in the record of this case. * * *"

Mr. Massingale, who was assigned to hear the charges in the original complaint and who presided at this hearing with "marked fairness," was described by Mr. Brown, who had been assigned to investigate the charges against said petitioners, in his able report to the Board of Governors, concludes as follows:

"In conclusion I wish to state that Gus Hadwiger has had somewhat of a remarkable career since coming to this country from Austria. So far as citizenship goes he has been a worthwhile contribution and has performed patriotic service to the government, and Woods county in particular, in an official way. He seems to have an unusual number of very devoted friends. They have the most complete confidence in him as a man and a lawyer, and, though practically all members of the bar at Alva have testified that the reputation of the firm of Hadwiger & Hadwiger for ethical and unfair practice was bad, yet in all of this testimony from these lawyers there is an undercurrent of sympathy and a kindly feeling toward Gus Hadwiger, and I am of the opinion that until the appearance of Robert Hadwiger in his father's firm that Gus Hadwiger was esteemed by the members of the Woods county bar. Robert is a young man, five or six years out of University of Oklahoma, and appears to be studious, industrious, and a good lawyer. He has made the mistake of going counter to the members of the bar in Alva and not trying to get along with them. I think this had its origin probably in Robert making statements to the members of the bar and others that their firm had a pull with the district judge and with other courts and thus assuming an air of superiority among the lawyers. In addition to this fault, the evidence shows that Robert has been somewhat resentful and has engaged

in the small practice of collecting witness fees for himself in cases where he was engaged as counsel and, upon one or two occasions, Gus Hadwiger also did thus. These things would naturally arouse in the minds of the members of the bar of Alva a righteous indignation. There is no question about the standing, integrity, and learning of the members of the bar who testified in this case for and against the respondents. A bad condition exists at Alva and I am inclined to think that it is due almost wholly to Robert's attitude to other members of the bar and I do not think this case would have ever been filed had it not been for such. The sin of Gus Hadwiger has been that common to all fathers, a blind devotion to his son. I don't think the evidence shows that Gus Hadwiger was guilty of any wrongdoing unless it was his failure to notify Cris Sims and Eliza Chambers regarding the J. H. Sims' will matter. The recommendations I have made in regard to all the charges against the respondents are the result of what I conceived to be the correct interpretation of the evidence submitted. I do not believe there is any disbarable offense and in making this statement I include also complaint No. 8, which I have asked the Bar Board, as a whole, to give consideration."

In a very recent case the Supreme Court of Illinois, in passing on disbarment proceedings against two young attorneys, ages 24 and 22, respectively, concerning their unprofessional conduct in charging a grossly excessive fee, in the case of People ex rel. Chicago Bar Ass'n v. Lotterman et al., 187 N. E. 424, on page 428, said:

"It is the duty of the court to protect the public against the wrongful acts of unscrupulous and dishonest attorneys. However, the court also owes a duty to attorneys who, though they have made a mistake in their professional conduct, have not done so through any base, sordid, or dishonest motives.

"Courts are vested with a large discretion in disbarment proceedings. That discretion is not to be exercised in an arbitrary manner, but is a legal discretion, to be exercised in accordance with the legal rules and principles for determining the guilt of the party charged. People v. Ader, 263 Ill. 319, 104 N. E. 1060. Disbarment of an attorney is the death of his professional life. Regardless of whether the misconduct charged amounts to a crime or merely to professional misconduct, such charge must be proved by clear and convincing testimony. People v. Kerker, 315 Ill. 572, 146 N. E. 439. The case made by the record must not only be free from doubt as to the act charged, but as to the motive with which it was done. People v. Mc-

**314**

Caskrin, 325 Ill. 149, 156 N. E. 328. In order to justify disbarment, not only must the acts of misconduct be proven by clear and convincing testimony, but fraudulent or dishonest motives must likewise be satisfactorily proved. It is not sufficient to justify disbarment that the evidence, taken as a whole, shows a state of facts discreditable to the respondent. If the evidence, taken as a whole, fails to satisfactorily show that the respondent has been guilty of dishonorable or criminal conduct, the charges made by the information cannot be sustained."

Much more might be said in reference to these various charges preferred against each of the petitioners. We feel that there is no necessity for further details concerning the situation surrounding these charges. Many differences have arisen between the petitioners and local contending attorneys at the bar. Political imbroglios have been injected into the record. The Board of Governors have recommended that the petitioner Gus Hadwiger be suspended from the practice of law for a period of 30 days, and that his son Robert L. Hadwiger be disbarred. In the light of the entire record, we are of the opinion that this recommendation is too harsh.

We conclude that the aforesaid public reprimand is sufficient answer to the charges made against the petitioner Gus Hadwiger. As to Robert L. Hadwiger, we are inclined to believe that the charges which we have considered are of a more severe nature and that he merits additional disciplinary action by this court. His youth and ability as an attorney at law are appealing. The record discloses unusual legal ability. We do not feel that such a promising career should be blighted; but the record as made cannot pass this court unnoticed. Petitioner Robert L. Hadwiger is suspended from the practice of law for a period of six months.

RILEY, C. J., CULLISON, V. C. J., and ANDREWS, OSBORN, BUSBY, and WELCH, JJ., concur. BAYLESS, J., absent. SWINDALL, J., not participating.