IN RE DISBARMENT OF JOSEPH F. DECARO.

No. 43027.

█

July 17, 1935.

Harry Garrett, Assistant Attorney General, for appellee.

Parsons, J.—This is a proceeding brought to disbar Joseph F. DeCaro and revoke his license to practice as an attorney in the state of Iowa, and was commenced by an accusation filed on the 30th of July, 1934, in the district court of Clinton county, Iowa, by the Clinton County Bar Association. The charge contained six grounds or counts. A contest court composed of Hon. D. W. Hamilton, Hon. Ralph Hasner, and the Hon. Norman D. Hays was appointed by the court, and the matter came on for hearing before said contest court, and on the 5th day of January, 1935, it was decided by said court that grounds 2, 3, and 4 were found not to have been sustained by the evidence, and were dismissed, and as to grounds 1, 5, and 6 the court found that the charges were established, and it ordered that DeCaro be disbarred from the practice of law in the state of Iowa, and that his license to so practice law be revoked. Proper exception was taken to this order and entry, and on the 11th day of January, 1935, notice of appeal to the Supreme Court was served by DeCaro. The case was thus appealed to this court.

On the outset of the case, and as set out in the brief of the prosecution, the question was raised as to whether or not this case should be tried on errors assigned, or whether it was triable de novo in this court. As that question confronts us throughout the case, it logically seems to be the first question to decide.

This court in, In re Disbarment of Cloud, 217 Iowa 3, 250 N. W. 160, had something to say on this subject. On account of

a question raised by Cloud's attorney, it was ruled by the contest court that the action should be tried as an action of law, and this was concurred in by the attorney for the prosecution. This court in that case said: "We have held that special proceedings are generally triable as law actions, and that on appeal the issues are to be determined on errors assigned," and also called attention to the opinion of the court in Norman v. Bennett, 216 Iowa 181, 246 N. W. 378, in which the court said, speaking through Justice Kindig,

"There being a conflict, then, in the evidence on the questions under consideration, this court, in this special proceeding, is bound by the finding of the municipal court. * * * On appeal in cases arising under a special proceeding of the kind in question, the controversy is determined on errors assigned."

In the Cloud opinion, it was said on page 11:

"However, notwithstanding the record made below by agreement of counsel that this proceeding be tried as a law action, under our prior holdings, a special proceeding for disbarment is an exception to the general rule and is triable here de novo, and we are so considering the present appeal." However, further on the court says: "As to whether or not the amendments to the statute providing for a special court of three judges to try and determine cases of this kind disposes of the exception mentioned, we do not now decide."

We think it is time it be determined whether or not this action is triable de novo or whether or not it is triable on error as an ordinary action. Section 10936 provides as follows:

"In case of a removal or suspension being ordered, an appeal therefrom lies to the supreme court, and all the original papers, together with a transcript of the record, shall thereupon be transferred to the supreme court, to be there considered and finally acted upon. A judgment of acquittal by a court of record is final."

In the Cloud case, the court, citing from the case of State v. Mosher, 128 Iowa 82, 103 N. W. 105, 5 Ann. Cas. 984, says:

"Special proceedings are generally triable on errors, but the statute makes an exception in the case of disbarment pro-

ceedings. The only object in directing the ·preservation of the evidence, and on appeal having 'all the original papers with the transcript of the record' transferred to the supreme court 'to be there considered and finally acted upon,' as required by section 329 [10936] of the Code, is to enable this court to hear the case de novo.''

What does section 10936 mean as to an appeal in such proceedings, to the supreme court, when it says ''all the original papers, together with a transcript of the record, shall thereupon be transferred to the supreme court, to be there considered and finally acted upon''? What is considered? All the original papers and a transcript. For what purpose is this done? That this court may act upon the same literally when an appeal is taken, and when all the directions of the statute are carried out this court is called upon to act on the record before it. Then, though there be no abstract, no argument, literally the statute calls for action by the supreme court. How then does this court act? Clearly on the records, and it has the power, and it is its right and duty, to examine into the right of the matter and to act as if it were considering the case as a trial court. Under no other way can the full intent of the statute be carried out.

As the statutes now stand, by section 10907, the power to admit persons to practice as attorneys and counselors in the courts of this state, or in any of them, is vested exclusively in the supreme court. It is elementary that a court having the power to admit, has the power to disbar the attorney from that court. And as the supreme court has the power to admit to all courts of the state, it logically follows that it has the power to disbar not only from practicing before it, but before all other courts in the state.

Going then to the question of whether or not the creation of the present form of contest court removed the matter passed on by it from the exception mentioned in the Mosher case to the general rule in hearings upon an appeal of a special proceeding, we see nothing that in any way removes any hearing in this court in disbarment proceedings from the rule laid down in the Mosher case.

Norman v. Bennett, 216 Iowa 181, 246 N. W. 378, has no bearing upon this case whatever, for the reason that it was a special proceeding commenced under section 11608 of the Code

to recover from the defendant, an attorney who had collected for the plaintiff from a check on the Marshalltown municipal court. It was in no sense a disbarment proceeding. True, it was a special proceeding, but the exception in the Mosher case goes only to disbarment proceedings, and is not applicable to such a case as the one of Norman v. Bennett.

The present form of contest court was first created by chapter 220 of the Forty-second General Assembly, and first appears in our Codes in the Code of 1927, being there divided, as in the present Code, into nine sections, running from 10934-b1 to 10934-b9, inclusive. The effect of this act is simply to transfer the trial of these cases from the judge of the district court, or from the district court itself, to the special tribunal created by the statute. The exact language of section 329 of the Code of 1897 was originally in the Code of 1873 as section 223. From there it went into section 329 of the Code of 1897, and it is found also in section 10936 of the Code of 1924 and in subsequent Codes. So when the exception was mentioned in the Mosher case, the rule was laid down that disbarment proceedings were an exception to the rule that special proceedings should be tried in the supreme court on error as actions of law. That rule is binding upon us, and we see no reason for departing therefrom. So we hold that it is triable de novo in this court, and by us it will be so considered.

As accusations 2, 3, and 4 were dismissed by the court on account of no evidence being introduced, we will discuss only the specifications or accusations upon which DeCaro was found guilty. The first accusation was the Kruse charge. Accusation No. 1 charged Joseph F. DeCaro with a willful violation of his duties as an attorney and counselor, in that he failed to maintain the respect due to a court of justice and to judicial officers, in that after an order had been entered in and by the municipal court of the city of Clinton, Iowa, committing one Elizabeth Kruse to the girls' school at Mitchellville, Iowa, and while she was in the custody of her mother until the day following that on which the order was entered, the said Joseph F. DeCaro conspired to defeat the order and decree of said court by arranging to transport, and that he did transport, the said Elizabeth Kruse into the state of Illinois and out of the jurisdiction of said court. The respondent admitted he transported Elizabeth Kruse into Illinois, and that because of such action he was found guilty of

contempt of court and paid a fine of $50. He further admitted full knowledge that she had been thus committed and admitted knowledge of the proceedings incident thereto in the municipal court, and that she was transported pursuant to an arrangement between said DeCaro and the girl's mother.

DeCaro was cited for contempt in municipal court on this charge; he pleaded guilty and was fined $50 and costs, which he paid. The facts were that the mother of Elizabeth Kruse, after the sentence of the girl, went to one Nellie Brown about it, and was referred to DeCaro. Mrs. Kruse with Mrs. Brown came to DeCaro's office and wanted to know if he could get her a lower sentence. He told her she came a little too late, that if she had come the day before he might have procured a postponement, but when a sentence had been pronounced nothing could be done about it. She commenced to cry, and finally DeCaro asked her if she knew any one in Illinois. She said she knew a party in Princeton. Mrs. Kruse then called one Louis Chapman who owned a car, and asked him to take the girl to Princeton, Illinois, a distance of about 130 miles. There was talk there with Chapman as to what it would cost, and the amount was fixed as somewhere about $25. For some reason Chapman did not take the girl, but he took her clothes and put them in the car, but left the car; DeCaro got the car and drove the girl to Princeton. There was no promise to pay DeCaro anything. He said he took the girl out of the jurisdiction of the court without any promise of compensation. Mrs. Kruse afterwards came, and on her own motion, gave him $5 for this trip, which was all he was paid for the case.

Accusation No. 5, the Heath charge, charged that Joseph F. DeCaro through his representative, a cousin, Cozzolino, solicited employment as defending counsel for one Vernon Heath in an action pending in the municipal court of the city of Clinton, Iowa, on June 26, 1934. The respondent specifically denies this charge.

Heath was in the municipal court charged with a serious crime. DeCaro dropped in, and his cousin and he talked some about Heath. The cousin went over to Heath and talked with him, and told him DeCaro might take the case. Heath himself then went over to DeCaro, who told him he could not take the case as it was too dirty, unless Heath would plead guilty, and he would charge him $50 to represent him. He then took the case,

waived to the grand jury, pleaded guilty and went to the district court before Judge Barker. True, it was testified, there was talk between DeCaro and his cousin that the cousin would go over and talk with Heath and suggest hiring DeCaro. DeCaro denies this, the cousin denies this, and Heath says the cousin only told him DeCaro might take the case, but he had to go and see him himself.

Accusation No. 6, the Beltz charge, charges that the said Joseph F. DeCaro did, by misrepresentation, receive the sum of $14.40 from Melvin Beltz, that said money was necessary to secure copies of guardianship proceedings from Wheeling, West Virginia, and that he failed to use said money for the purpose for which it was obtained, and refused to pay or deliver it in a reasonable time on demand to the said Melvin Beltz. In his answer respondent denied the charge.

Beltz had employed DeCaro to get some money from an attorney who had collected for him. DeCaro collected $400 and charged Beltz $140, which Beltz thought satisfactory. Then Beltz talked to DeCaro about some money he claimed due him in Wheeling, West Virginia. DeCaro told him it would be necessary to have copies of the papers in Wheeling, and estimated the amount necessary to pay for the papers to be $14.40, which Beltz paid DeCaro. DeCaro wrote to the clerk at Wheeling about the papers. But Beltz had scarcely left DeCaro's office when he wrote to the clerk himself, telling him he had given DeCaro $14.40 to send to him for certain papers, and said in the letter, ''so please write and let me know at once as I would like to keep a close check on this attorney, a Mr. DeCaro, which I hired to work on the case.''

The clerk replied, ''Recently there have been no inquiries in this estate so far as this office is concerned.'' However, after writing to the clerk, and receiving the note from the clerk, on March 24th Beltz again went to DeCaro's office and entered into a written contract employing him as his attorney to act for him. DeCaro was to act in connection with one Beneke, an attorney at Wheeling, and in writing to him DeCaro criticized the attorney who had been in the case. Beneke wrote back, saying DeCaro was mistaken in his opinion of the attorney, but he declined to have anything to do with a case in which the Beltz boys were interested, as in another matter one of the boys had signed a release, and the others were about to do so when they were

stopped. Following this, then, Beltz made complaint to Judge Barker, who called in DeCaro and had a talk with him. Beltz following him up there, called DeCaro, in the presence of the court and in the presence of another witness, the vilest of names, so vile that many a jury has held such an epithet reflecting upon his maternal ancestry to be justifiable for assault. So DeCaro did not give Beltz back the $14.40. So far as the record shows, he was still working on the case. The contract made the 24th of March fixed the compensation of DeCaro as 35 per cent of the amount collected, yet Beltz went on the stand and tried to make the amount a great deal larger, lying about it.

■■■ It hardly appears to us that the contest court was justified in finding DeCaro guilty on the fifth and sixth accusations. They were not sustained by such clear, satisfactory, and convincing proof as is required in cases of this character. The Heath case appears to us to be trivial, and that DeCaro should clearly be found not guilty under this charge. The Beltz case, taking into consideration all of the relations of Beltz with DeCaro, the character of Beltz as disclosed by the testimony, the row that had grown up between them, would hardly bar DeCaro from taking the position that he had done work for Beltz; that he had received money for certain papers; that he was either keeping it for that purpose or was keeping it to pay for the work he had done; Beltz making it almost impossible for him to carry out his contract; and Beltz desiring satisfaction and his money returned. The lawyer in a case of this character particularly is subject to blackmail, and persons should not be encouraged to bring every dispute with a lawyer in the form of an accusation that will take from him his license to practice law.

■■■ As to the first accusation, the court properly found the defendant guilty. So it comes to us as to what should be done in this case. We are looking at the whole case. We are trying to see whether or not DeCaro should have his professional life extinguished by an absolute disbarment, or whether he should be properly disciplined, as may be in such cases.

DeCaro was 26 years old at the time of hearing before the special tribunal. His father was a laborer on the Boston & Albany Railway. Young DeCaro was the third oldest of a family of nine children, attended school in Worcester, Massachusetts, and after finishing the public schools went to work. During his high school days he worked nights in a bowling alley setting up

pins from three or four o'clock in the afternoon until midnight, for about three years. While attending law school he worked for the Boston & Albany Railway and attended night school at Boston. He would take a train in Worcester at 4:30 in the afternoon and get to Boston about 5:45, take classes, leave Boston at 11:45 p. m. and get into Worcester at 12:30. That is the way he obtained his means for attending law school. After he finished law school he was ill and took a rest until he came to Iowa in 1933. He was admitted on examination to the bar on October 5, 1933. He is married, and occupied an office with Lee R. Harding, an attorney.

Judge Barker, who held that position in the district court of that district for about thirty years, knew the young man and testified that prior to these things coming up he had heard nothing against DeCaro; that his character was good. Another witness testified as to the good character of DeCaro. Nothing has been shown in the record except the testimony on the three counts passed upon by the contest court. The question is then, What should be done in this case? In the Cloud case permanent disbarment was ordered. There was an attorney with 32 years' experience at the bar, who had systematically carried on acts of deception, and who acted in bad faith with his clients, and the disbarment was made permanent.

The law in this case is well set out in 6 C. J. at pages 612, 613, and reads as follows:

"In arriving at the punishment which should be imposed, each case must be largely governed by its particular facts, and the matter rests in the sound discretion of the court. *The question is not what punishment may the offense warrant, but what does it require as a penalty to the offender, as a deterrent to others, and as an indication to laymen that the courts will maintain the ethics of the profession.* A removal from the bar should not be decreed where any punishment less severe, such as reprimand, temporary suspension, or fine, would accomplish the end desired." 6 C. J. 612.

"Where mitigating circumstances are shown, such as previous good character or inexperience, the court will often suspend rather than disbar the attorney, or will reduce the term of suspension." 6 C. J. 613.

In re Hadwiger, 167 Okl. 307, 27 P. (2d) 604, the supreme court of Oklahoma said:

"It is the duty of the court to protect the public against the wrongful acts of unscrupulous and dishonest attorneys. However, the court also owes a duty to attorneys who, though they have made a mistake in their professional conduct, have not done so through any base, sordid, or dishonest motives. * * *"

And further on in its opinion, the court said:

"Courts are vested with a large discretion in disbarment proceedings. That discretion is not to be exercised in an arbitrary manner, but is a legal discretion, to be exercised in accordance with the legal rules and principles for determining the guilt of the party charged. People v. Ader, 263 Ill. 319, 104 N. E. 1060. Disbarment of an attorney is the death of his professional life. Regardless of whether the misconduct charged amounts to a crime or merely to professional misconduct, such charge must be proved by clear and convincing testimony. People v. Kerker, 315 Ill. 572, 146 N. E. 439. The case made by the record must not only be free from doubt as to the act charged but as to the motive with which it was done. People v. McCaskrin, 325 Ill. 149, 156 N. E. 328. In order to justify disbarment, not only must the acts of misconduct be proven by clear and convincing testimony, but fraudulent or dishonest motives must likewise be satisfactorily proved. It is not sufficient to justify disbarment that the evidence, taken as a whole, shows a state of facts discreditable to the respondent. If the evidence, taken as a whole, fails to satisfactorily show that the respondent has been guilty of dishonorable or criminal conduct, the charges made by the information cannot be sustained."

So, taking into account the extreme youth of DeCaro, the short time he had been at the bar, his necessarily limited experience, his struggles under adverse conditions to fit himself to become a lawyer, the trifling character of the accusations 5 and 6, and the surrounding circumstances as to what he did in the case of the Kruse girl, it calls for some consideration by this court. What we might say or do with an attorney of larger experience, mature years, is not necessarily what would be just to this young man. The only charge that would in any way, under any circumstances, call for disbarment from practice, that is set forth, is the Kruse charge. He did this under the circumstance of appeal to his sympathy; with the impetuousness of youth; with the lack of experience he had, the consequences of the act of taking the

girl beyond the jurisdiction of the court would not occur to him as to an older and more experienced attorney.

With all these things in view, DeCaro should have been disciplined. We therefore hold that the judgment of the special tribunal be affirmed, with the provision that he may apply for reinstatement after one year from the date of the filing of this opinion, and after giving written notice thereof to the president of the Bar Association of Clinton county, Iowa, and to the Attorney General, ten days prior to filing his petition. The decision of the special tribunal is therefore modified to the extent above indicated, and, as modified, affirmed.—Modified and affirmed.

KINTZINGER, C. J., and all Justices concur.