Application for Reinstatement to the Practice of Law by JOSEPH F. DeCARO.

## ORDER OF COURT DENYING APPLICATION.

On November 15, 1948, this application was filed, purporting to be in accordance with the opinion of this court in case No. 43027, In re Disbarment of Joseph F. DeCaro, 220 Iowa 176, 262 N. W. 132, filed July 17, 1935. In that opinion the decision of the special contest court disbarring DeCaro (hereinafter referred to as applicant) was affirmed, as modified however, to permit him to apply for reinstatement after one year. The present application apparently represents his first and only attempt to avail himself of that permission.

However, in less than one year, to wit, on June 4, 1936, the applicant (by application dated May 28) procured himself to

be admitted to practice law in Iowa under the false name of William Clark (sometimes written Clarke) by presenting forged certificate of Dean Herbert F. Goodrich of the Law School of the University of Pennsylvania, to the effect that he had concluded the law course of that institution. We are now advised its records show no graduate named DeCaro, and no one named William Clark (or Clarke) except one who graduated six years later in 1942. This second admission to practice was canceled by order of this court dated October 21, 1937, being surrendered voluntarily when the identity of the individual became known.

Under his original certificate to practice law in Iowa applicant practiced in Clinton, Iowa, and under the second, as William Clark, in Council Bluffs.

The present application was set down for hearing on February 8, 1949, with direction for notice to various persons in Clinton and Council Bluffs. Before the appointed day, however, applicant's attorneys withdrew their appearance. No other appearance by attorney or in person has been made and applicant is now in default. In the meantime most of the letters of recommendation from Clinton and Council Bluffs that were presented with the application have been by their writers withdrawn and determined protests have been filed from both cities against any reinstatement.

When the present application was filed curiosity was aroused as to the basis of applicant's original license to practice in Iowa and an investigation was launched. That certificate of admission was issued October 5, 1933, upon an application which submitted a purported certificate of Dean Gleason L. Archer of Suffolk University Law School, Boston, Massachusetts, to the effect that applicant had finished a course of law in that institution. The evidence now indicates quite conclusively that the purported certificate of Dean Archer was forged. Applicant spent several years (1929 to 1932) in that law school but did not graduate. Notation in the handwriting of Dean Archer on his record card in that institution recites: "Concealed criminal record on application for admission to school. Not eligible to return. October, 1932—Gleason L. Archer." Other notations were: "Made a false statement in his application for admission

to the school"; "March, 1932—asked to resign as Class Treasurer of Class 1932. Turned money over due class after much difficulty"; "January, 1932—Working at Alumni Association during senior year. Accused by President of not turning in dues, collected from students. Dismissed January, 1932"; "September, 1932—Has taken January, 1932, and July, 1932 bar. Not passed. Charges of larceny and breaking and entering filed in 1927. Should not be allowed to return." .

It is apparent the original license to practice which the applicant now asks to have reinstated was procured by fraud and forgery; the second, under a false name, and in a similar manner. These facts alone show he is utterly unfit for admission to practice law, in spite of the imposing array of subsequent alleged honorable employments which he now lists in his application as ground for leniency and benevolent forgetfulness on our part. In view of his past record, as briefly outlined above and of other facts to be hereinafter referred to, we may be permitted to question the accuracy and honesty of the statements therein contained as to his more recent career.

In Clinton, Iowa, on July 1, 1935, as executor of an estate, he was guilty of larceny by embezzlement. His appeal from the disbarment judgment was then pending in this court. On November 26, 1937, shortly after the "Clark" license to practice was canceled, he pleaded guilty to the charge and was sentenced by the Clinton District Court to a five-year penitentiary term, "suspended during good behavior," and paroled to his uncle in Clinton.

In Council Bluffs, during his brief practice there under the name Clark, he was found guilty of contempt of court and seems to have served a jail sentence. In Clinton he was fined for a similar offense. The present application reveals that at sometime during his hectic professional career his wife divorced him and thereafter, on April 28, 1936, he was charged in Boston, Massachusetts, with neglect and refusal to support his minor child. He was found guilty, sentenced and placed on probation. It is charged that later (1941) warrant was issued on his default and he was placed on probation for two years.

Applicant is now under indictment in the United States District Court for the District of Columbia charged with wil-

fully false and fraudulent statements and concealments by him in making various applications for Federal employment. Our latest information is that he is a fugitive from justice being sought by the United States authorities.

It is manifest a small part of the foregoing recital would have been sufficient upon which to predicate a denial of the present application. Our purpose in making the more elaborate statement (still sketchy and doubtless incomplete) is to foreclose any further attempts of a similar character. Applicant's audacity, resourcefulness and plausibility seem unbounded. He is hampered by no scruples of honesty or realization of the inevitability of final discovery and defeat. He has been the beneficiary of unbelievable forbearance and leniency not only by this court but by trial courts which have softened or suspended sentences and issued paroles far beyond his deserts. Certainly "the quality of mercy" has not been "strained."

Our duty is clear, not only to deny the application but to protect the public and our profession, so far as possible, from any further injury by one who apparently knows naught of ethics or honesty. We hope this inadequate, and possibly in some immaterial respects inaccurate, recital may not be in vain.

The application is denied and the permission to apply for reinstatement granted by us in 1935 is hereby withdrawn.